Timothy J. BLANCHETTE

v.

**YORK MUTUAL INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1983.

Decided Jan. 31, 1983.

Jordan & Goodridge, Donald H. Goodridge (orally), Houlton, for plaintiff.

Barnes & Sylvester, Torrey A. Sylvester (orally), Houlton, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

The defendant, York Mutual Insurance Company, appeals from a judgment entered against it in the sum of $5,000.00 resulting from a jury trial in Superior Court (Aroostook County).

The defendant contends that the judgment is not permitted by the loss settlement provisions of the subject policy of insurance. Simply stated, it is the position of the defendant that plaintiff does not qualify for replacement cost reimbursement under the policy coverage for fire loss because the insured building was not replaced on the same premises. Further the defendant claims that plaintiff's action is barred by his failure to commence suit within the time period specified in the policy.[1] We find no merit in either contention and we deny the appeal.

The underlying facts may be summarized as follows: On September 13, 1979 the plaintiff, Timothy J. Blanchette, bought a home located in New Limerick and obtained a homeowners policy of insurance from the defendant. The policy included fire insurance on the building in the total amount of $15,000.00. On October 16, 1979, the building was totally destroyed by fire. Mr.

---

1. Defendant also assigns as error the failure of the presiding justice to interpret for the jury the legal effect of the language of the loss settlement provisions of the insurance policy.

Any error which may have been committed in permitting the jury to interpret the policy is harmless since their apparent interpretation is consistent with that set forth herein.

Blanchette consulted with a claims adjuster representing the defendant, and as a result exercised the option provided in the policy to take the "actual cash value" of the property ($10,000.00) while retaining the right to claim a greater amount if he replaced the home.[2] Mr. Blanchette informed the adjuster that he intended to qualify to claim the additional funds available on the "replacement cost loss settlement basis" by replacing the building. He further stated that he might not be able to replace the structure immediately due to the onset of winter. In response, the adjuster granted Mr. Blanchette a 90-day extension to the 180-day period in which claims for reimbursement for replacement cost could be filed.

In April of 1980, the plaintiff learned that he could not rebuild the home on the existing lot because of local ordinances pertaining to sewerage treatment. Thereupon he informed the defendant that he wished to replace the home by building on another site. A representative of the defendant stated to Mr. Blanchette that he would not qualify for replacement cost reimbursement unless he built on the original lot and unless the replacement structure was "substantially completed" within the 270-day period (180 days plus the 90-day extension).

Plaintiff subsequently built a two-story house on a new and larger lot. The house was not substantially completed within the 270 days, but plaintiff did make an oral claim for replacement costs within that period of time and requested that the 270 day period be further extended. Neither request was granted by the defendant and the present action resulted.

The first issue presented is whether the replacement cost feature of the insurance policy applies only if the damaged structure is repaired or replaced on the same premises and is substantially completed within the time allowed for making a claim. We do not construe the insurance contract to impose such requirements.

The relevant portion of the policy, entitled "loss settlement", states that losses in regard to insured buildings will be settled as follows:

(1) if at the time of loss the amount of insurance in this policy on the damaged building is 80% or more of the full payment cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the limit of liability under this policy applying to the building;

(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

The parties stipulated below that the amount of the insurance ($15,000.00) exceeds 80% of the "full payment cost of the building immediately prior to the loss." It was further stipulated that the cost of building a home similar to the plaintiff's original home on the same premises would be $18,472.00. The record would warrant the conclusion by the jury that as of the date of trial plaintiff had expended $16,000.00 in erecting a new house on different premises. Applying these figures to the language of the contract it is clear that plaintiff is entitled to recover the smaller of the three amounts, namely $15,000.00, less the settlement previously received.

 Defendant seeks to avoid the foregoing result by arguing that the phrase "on the same premises" contained in sub-paragraph (b) should be read into sub-paragraph

---

2. Section 3(c)(5) of the policy provides as follows:

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

(c). The express language refutes such an assertion and no rule of construction supports such a reading of the contract.

Similarly, there is no merit in defendant's claim that eligibility for replacement cost reimbursement is contingent upon the replacement structure being "substantially complete" within 180 days of the loss. Section 3(c)(5) of the contract provides that to qualify for reimbursement for replacement cost, the insured must "make claim within 180 days after loss." There is simply no support for the company's argument that the obligation to make a claim imposes the requirement that the replacement building must be "substantially complete" at the time the claim is made. The language of the contract is clear and unambiguous and it supports the judgment rendered in this case.

■ For its final point, the defendant for the first time on appeal, seeks the dismissal of the action because of noncompliance with the provisions of the policy which requires that suit be commenced within "twelve months next after inception of the loss." The loss took place on October 16, 1979 and the record reflects that the action was commenced on November 24, 1980. Since this issue was neither pleaded nor litigated at trial it cannot be raised at this stage of the proceedings.[3] As stated in *Cannan v. Bob Chambers Ford*, 432 A.2d 387, 389 (Me.1981):

> Where a party seeks to raise an issue for the first time on appeal for the purpose of attacking the judgment from which he appeals, he is held to have waived that issue for appellate review because he failed to submit the question for decision at the trial level. *Emerson v. Ham*, Me., 411 A.2d 687, 690 (1980); *Laurel Bank & Trust Co. v. Burns*, Me., 398 A.2d 41, 44 (1979); M.R.Civ.P. 46.

**3.** We note that the limitation contained in the policy contravenes 24–A M.R.S.A. § 3002(1) (1974) which mandates the following provision for all fire insurance policies issued in Maine:

> *Suit.* No suit or action on this policy for the recovery of any claim shall be sustainable in

The entry must be:

Judgment affirmed.

All concurring.

any court of law or equity unless all the requirements of this policy shall have been complied with, *and unless commenced within two years next after inception of the loss.* (emphasis added)