**Larry PELLETIER, et al.**

v.

**JORDAN ASSOCIATES, et al.**

**Larry PELLETIER**

v.

**JORDAN ASSOCIATES, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1987.
Decided April 8, 1987.

Frank W. DeLong, III, Hunt, Thompson & Bowie, Portland, Francis M. Jackson, Jackson & Pallas, Westbrook, for plaintiffs.

Marshall J. Tinkle (orally), David M. Hirshon, Karen Pelletier O'Sullivan, Thompson, McNaboe & Ashley, Portland, for Jordan Associates.

Keith R. Jacques (orally), Michael A. Nelson, Jensen Baird Gardner & Henry, Portland, for ERA, Inc.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Plaintiffs Larry Pelletier and Paul L. Young appeal from summary judgments entered in two consolidated actions in the Superior Court, Cumberland County, in favor of defendants Jordan Associates (Jordan) and The Electronic Realty Associates, Inc. (ERA). Jordan appeals from the dismissal of its cross-claim against ERA. In a separate case, consolidated on appeal, Pelletier also challenges the dismissal of his complaint in another action against Jordan and ERA. Because we agree with the plaintiffs' contention that the Superior Court erroneously interpreted the provisions of ERA's Buyers Protection Plan (BPP), we vacate the summary judgments

and dismissal orders that resulted from that erroneous interpretation.

Pelletier purchased a home through Jordan, a realty firm associated with ERA, a corporation that sells franchises to real estate brokers throughout the country. One feature ERA offers buyers, through its franchises, is a BPP that is essentially a service agreement under which ERA agrees to repair or replace certain equipment in the house in case of mechanical failure. Pelletier purchased such a three year service agreement through Jordan.

Pelletier experienced serious electrical problems after he moved into his home. He telephoned Jordan and it sent over an electrician. The electrician repaired parts of the electrical system and informed Pelletier that there was a problem with the wiring in the basement. Pelletier notified Jordan several times about the wiring in the basement, but neither Jordan nor ERA took any action. Some four years after the electrician made repairs, Pelletier's house burned down, allegedly as a result of an electrical fire originating under the kitchen floor. Young, a tenant in Pelletier's house at the time of the fire, also suffered a loss as a result of the fire.

Pelletier's complaint in CV 81–1535 sought recovery from the defendants on theories of negligence (Count I), breach of contract (Count II), and breach of warranty (Count III). Young's complaint in CV 84–465, later consolidated with CV 81–1535, sought recovery from the defendants on theories of negligence (Count I) and breach of warranty (Count II). Jordan filed a cross-claim against ERA for indemnification and both defendants filed third-party complaints against the electrician. On October 31, 1984 the Superior Court granted ERA's motion for partial summary judgment on the ground that the plain meaning of its contract with Pelletier precluded re-covery on Counts II and III in CV 81–1535. Subsequent rulings granted summary judgment to Jordan on Counts II and III in CV 81–1535 and to both Jordan and ERA on Count I in CV 81–1535 and on both counts in CV 84–465 and dismissed the cross-claim and third-party complaint. The court also denied Pelletier's motion to amend his complaint to add Count IV (false representation) and Count V (violation of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 206–214 (1979 and Supp.1986)). Thereafter, Pelletier filed a new complaint, CV 85–629, containing the same allegations that were in the proposed amendment. The Superior Court also dismissed CV 85–629.

■ On ERA's motion for partial summary judgment, the Superior Court held that the BPP expressly and unambiguously excluded claims by the buyer for consequential damages and damages that could be covered by homeowners' insurance. Whether contract language is ambiguous is a question of law. The interpretation of unambiguous language is also a question of law and is determined from the plain meaning of the language used, without resort to extrinsic evidence. *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me.1983).

■ We conclude that the trial court was incorrect in granting summary judgment in favor of ERA based on the exclusions stated in paragraphs three and four of the BPP.[1] Paragraph 4 unambiguously excuses ERA from liability for consequential damages made necessary by the repair and replacement of a mechanical failure. In other words, if it repaired the electrical system and as a result a wall needed to be repainted, ERA would not be responsible. In this case, however, ERA failed to provide services. This clause clearly does not exempt ERA from consequential damages

---

1. Paragraph 3 provides in pertinent part:
    A. Company shall not be obligated to repair or replace if failures caused by the following:
    . . . .
        6. Damage caused by outside perils such as freezing, fire, flood, wind, water, lightning, mud, earthquake, ice, snow, sleet, explosion, vandalism, accident, or other condition than normal use of the system or any cause that could be covered by what is commonly known as homeowners' insurance.
    Paragraph 4 provides in pertinent part:
        Company or Agent is not liable for any decorating, consequential, or secondary repairs or replacements made necessary by the provision of its services.

that are a result of nonfeasance. Thus, the court was incorrect in concluding that this clause "expressly excludes claims for consequential damages."

Paragraph 3 of the BPP unambiguously excuses ERA from paying for damages *caused* by fire or any other source normally covered by homeowners' insurance. It does not, however, exempt ERA from liability for damages that were caused by its failure to make repairs. The very purpose of this BPP is to provide repair or replacement services for mechanical failures. By failing to repair an electrical problem and then refusing to pay for the damage resulting form the omission merely because the immediate source of the damage is a peril covered by homeowners' insurance, ERA undercuts the very purpose of this BPP. This exception is unambiguous and would not as a matter of law excuse ERA from covering the damage if the fire had been caused by its failure to make necessary repairs to the electrical system. Summary judgment is inappropriate, therefore, because ERA is not "entitled to a judgment as a matter of law." M.R.Civ.P. 56(c).

The ruling on ERA's initial motion for partial summary judgment was dated October 31, 1984. Although the docket entries are far from clear, it appears that a series of rulings by various Superior Court justices followed the initial erroneous interpretation of ERA's BPP. Some of these rulings may be independently supportable under a proper interpretation of the BPP. The record reflects, however, that all of these rulings are based in part upon the perceived law of the case or upon the procedural posture of the litigation subsequent to the erroneous summary judgment. The interests of justice, therefore, require not only the vacation of the partial summary judgment ordered on October 31, 1984 in CV 81–1535, but also the orders in CV 81–1535 and CV 84–465 dated December 26, 1984 (partial summary judgment in favor of Jordan), June 10, 1985 (denial of motion to amend), October 10, 1985 (in limine order), March 5, 1986 (dismissal of cross-claim), and March 6, 1986 (final summary judgment against Pelletier and Young; third-party complaint dismissed *sua sponte*). Finally, although the issue may become moot, we vacate the dismissal dated April 30, 1986 in CV 85–629 because the order was based upon the final disposition (including the denial of the amendment) in CV 81–1535.

The entry is:

Judgments vacated in CV 81–1535 and CV 84–465.

Judgment vacated in CV 85–629.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

All concurring.