**William L. BOUDREAU, et al.**

v.

**MANUFACTURERS & MERCHANTS MUTUAL INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 2, 1991.
Decided March 7, 1991.

Marvin H. Glazier, Vafiades, Brountas & Kominsky, Bangor, for plaintiffs.

Paul Rudman, Barbara Cardone, Rudman & Winchell, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

CLIFFORD, Justice.

Plaintiffs William and Judy Boudreau appeal from a judgment for the defendant Manufacturers and Merchants Mutual Insurance Company (Manufacturers) entered by the Superior Court (Penobscot County, *Pierson, J.*) following a nonjury trial to resolve a dispute over the amount due the Boudreaus under the fire insurance provisions of a homeowner's insurance policy. On appeal, the Boudreaus contend that the Superior Court erroneously interpreted the loss settlement clause of the policy and improperly excluded from its calculation of damages wages paid to Mr. Boudreau and others who helped him construct a home to

replace the one destroyed by fire. The Boudreaus also contend that the court erred in declining to award interest, attorney fees and costs. Finding no error, we affirm the judgment.

In October 1984, William and Judy Boudreau purchased a farm house and twenty acres of land in Dexter for $33,500. They also purchased a homeowner's insurance policy underwritten by Manufacturers, with a maximum coverage of $95,000. Less than two months later, the farm house was destroyed by fire.

The Boudreaus gave Manufacturers timely notice of the fire and filed a sworn proof of loss statement outlining their claim for the "actual cash value" of the real and personal property destroyed in the fire. Manufacturers promptly disputed the claim. In November 1986, the Boudreaus settled their claim for $24,000, representing the actual cash value of the destroyed real property.[1] In the settlement agreement, the Boudreaus reserved the right to file a further claim for costs in excess of $24,000 they might incur in replacing the farm house.

Following the settlement, the Boudreaus filed this action seeking payment from Manufacturers of either the face value of the insurance policy ($95,000) or the "replacement value"[2] of the farm house plus interest and attorney fees. Manufacturers denied liability. The parties have stipulated that the cost to fully replace the Dexter farm house with the same type of structure would be $203,658.58.[3] The parties also agree that Section I—CONDITIONS, subsection 3(C)(2)(b), the "coinsurance clause" of the loss settlement section of the insurance policy, governs this dispute because the Boudreaus were underinsured. The face amount of the Boudreaus' coverage ($95,000) is less than eighty percent of what they needed to be fully insured ($203,658.58), thus triggering the applicability of Section I(3)(C)(2)(b).[4]

The Boudreaus never attempted to rebuild the Dexter farm house. Instead, they sought to hold Manufacturers liable for costs they incurred in building another house in Orange, Massachusetts.[5] At trial, the Boudreaus presented evidence, including cancelled checks, indicating that they spent $58,054 for materials and supplies in building the house in Massachusetts. The Boudreaus also presented evidence regarding wages they claimed to have paid in the construction, including payments to William Boudreau himself. The Superior Court accepted $58,054 as the actual amount spent by the Boudreaus on materials and supplies, but concluded that the evidence as to labor was insufficient, finding the handwritten wage records and the testimony regarding amounts spent on labor to be unreliable.[6] Having determined

---

1. In addition to the $24,000 for the real property, the Boudreaus received $5,772 for the cash value of the personal property lost in the fire.

2. Apparently, the Boudreaus meant by "replacement value," the replacement cost.

3. This amount reflects the "replacement cost" of the property destroyed by the fire.

4. Policy Sections I(3)(C)(2)(a) & (b) provide:
   3. **Loss Settlement.** Covered property losses are settled as follows:
   . . . .
   (C) Buildings under Coverage A or B at replacement cost without deduction for depreciation subject to the following:
   . . . .
   (2) If at the time of the loss the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately prior to the loss, we will pay the larger of the following amounts, but not exceeding the limit of liability under this policy applying to the building:
   (a) The actual cash value of that part of the building damaged; or
   (b) that proportion of the cost to repair or replace, without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

5. We have allowed an insured to recover the cost to repair or replace a building under a provision similar to the provision under which the Boudreaus seek recovery even though the building is not replaced on the same premises. *Blanchette v. York Mut. Ins. Co.*, 455 A.2d 426, 427–28 (Me.1983).

6. We find unpersuasive the Boudreaus' contention that the court erred in finding insufficient their evidence as to labor incurred in building the Massachusetts home. The evidence was that

the amount spent by the Boudreaus to build the Massachusetts property, the court applied the formula set forth in the coinsurance clause of the policy in awarding them damages. This appeal by the Boudreaus followed.

■ The Boudreaus contend that the Superior Court incorrectly interpreted the co-insurance clause in calculating its award. A trial court's interpretation of an unambiguous contract, such as this insurance policy, on the basis of the four corners of the document is a question of law and is given de novo review on appeal. *Pelletier v. Jordan Assoc.*, 523 A.2d 1385, 1386 (Me. 1987). Our review of the policy language leads us to conclude that the Superior Court correctly construed the contract.

The coinsurance clause provides that the insurance company will pay "that proportion of the cost to repair or replace ... which the total amount of insurance in this policy on the damaged building bears to [eighty percent] of the replacement cost of the building" up to an amount not exceeding the limit of liability under the policy. The court correctly determined that fifty-eight percent is the proportion that the total amount of insurance ($95,000) bears to eighty percent of the replacement cost of the farm house ($162,926.70). The court then construed the coinsurance clause to mean that the Boudreaus were entitled to an award of fifty-eight percent of the

amount the Boudreaus proved they *actually spent* to build the Massachusetts home. Having found that the Boudreaus were able to document $58,054 in expenses to construct the Massachusetts home, the court awarded them $33,671.32, or fifty-eight percent of $58,054.[7]

■ It is not the mathematical calculation of the court that the Boudreaus dispute. They contend that the court impermissibly limited their recovery to a percentage of the amount they actually proved to have spent on the Massachusetts home (found by the court to be $58,054), as opposed to what they claim to be entitled to, namely, fifty-eight percent of the *replacement cost* of the property.[8] The Boudreaus thus contend that under the formula in the policy they are entitled to recover the full face amount of the policy, $95,000. We find that contention to be unpersuasive.

One of the options available to a party who is *fully insured*, not applicable to the Boudreaus here, is to recover the "replacement cost" of a damaged building under certain limited conditions.[9] "Replacement cost" is an estimate of the amount it would cost to restore a damaged structure to its prefire condition. *See Blanchette v. York Mut. Ins. Co.*, 455 A.2d 426, 427 (Me.1983). In this case, the parties agreed that the replacement cost of the Dexter property was $203,658.58. The coinsurance provi-

---

the laborers were paid in cash. The court concluded that the wage sheets presented as documentary evidence were generated in preparation for litigation and were not accurate records of the expenditures. The Boudreaus were unable to produce W–2 forms, tax returns or other reliable documentation to support the amounts they claim to have spent on labor. We cannot say the court was compelled to find that the Boudreaus met their burden of proof as to wages incurred in the construction. The Boudreaus do not contend that the trial court should have arrived at a reasonable value for labor costs and we do not address that issue.

7. Deducted from the amount to be recovered by the Boudreaus was the amount they collected previously for the actual cash value of the loss.

8. Fifty-eight percent of the stipulated replacement cost of $203,658.58 is $118,121.86, which exceeds the $95,000 face amount of the policy. See *supra* note 4.

9. If the Boudreaus had been fully insured, the following loss settlement provision would have applied:

If at the time of loss the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the limit of liability under this policy applying to the building;

(b) the *replacement cost* of that part of the building damaged for equivalent construction and use on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

Policy Section I(3)(C)(1)(a)–(c) (emphasis added).

 

sion under which the Boudreaus are entitled to recover, makes no provision for recovery of replacement cost and, in Section I(3)(C)(2)(b), limits recovery to "that proportion of the *cost to repair or replace,* without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to [eighty percent] of the *replacement cost* of the building." [10] (Emphasis added.) The "cost to repair or replace" provisions in the policy are distinct from and used in a different context than "replacement cost." The court correctly interpreted the "cost to repair or replace" provision in Section I(3)(C)(2)(b) to mean the amount actually spent by the Boudreaus to construct their property in Massachusetts, and properly limited the Boudreaus' recovery before deductions to $33,671.12, representing fifty-eight percent of the expenditures found by the court to be eligible for recovery.

The Boudreaus also contend that the court erred in declining to award them interest, attorney fees and costs. The Superior Court initially granted the Boudreaus' bill of costs submitted pursuant to 14 M.R.S.A. § 1502–D (Supp.1990) and ordered the defendant to pay $100 for filing fees, $223.50 for deposition costs and one and one-half percent interest as of December 4, 1986.[11] Upon reconsideration at the request of the defendant, the court deleted its award of interest and deposition costs.[12] Prejudgment interest was correctly award-

ed pursuant to 14 M.R.S.A. § 1602 (Supp. 1990). We find no error or abuse of discretion in the court's final award.

The entry is:

Judgment affirmed.

All concurring.

---

10. Even if the Boudreaus had been fully insured and entitled to recover under Policy Section I(3)(C)(1), they could not have recovered the replacement cost in this case. Recovery under Policy Section I(3)(C)(1) is limited to the *smallest* amount of (a) the liability limits ($95,000), (b) the replacement cost ($203,658.58), or (c) the "amount actually and necessarily spent to repair or replace the damaged building" (found by the court to be only $58,054). Moreover, in this case the Boudreaus are seeking to recover for expenditures made at a different location. This precludes recovery under the "replacement cost" section, which is limited to "replacement on the same premises." Policy Section I(3)(C)(1)(b). *See Blanchette,* 455 A.2d at 427–28.

11. The interest rate requested in the bill of costs appears to have been based on 24–A M.R.S.A.

§ 2436 (1990). This statute requires an insurer either to dispute a claim or pay it within thirty days after receipt of an insured's proof of loss. If the insurer fails to do so, interest may be awarded to the insured. *Maine Mut. Fire Ins. Co. v. Watson,* 532 A.2d 686, 690 (Me.1987). Because Manufacturers legitimately disputed the claims in a timely fashion, the Boudreaus are not entitled to interest under section 2436. *See Chiapetta v. Lumbermens Mut. Ins. Co.,* 583 A.2d 198, 200 (Me.1991).

12. An award of costs for the taking of depositions pursuant to 14 M.R.S.A. § 1502–C (Supp. 1990) and M.R.Civ.P. 54(g), is a discretionary one and will not be disturbed on appeal absent a showing that the discretion was abused. *See Greenlaw v. Rodney Stinson Post No. 102,* 567 A.2d 75, 76–77 (Me.1989). The Boudreaus have made no such showing here.