A. Dewey **RICHARDS**

v.

**HARRY PEDDIE, M.D., P.A., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 15, 1993.

Decided May 16, 1994.

---

Gail Fisk Malone, Rudman & Winchell, Bangor, for plaintiff.

Peter B. Bickerman, Lipman & Katz, P.A., Augusta, for defendants.

---

* Justice Collins participated in the initial conference while he was a justice, and, on order of the Chief Justice was authorized to continue his participation in his capacity of Active Retired Justice.

Before ROBERTS, GLASSMAN, CLIFFORD, and DANA, JJ., and COLLINS, A.R.J.*

COLLINS, Active Retired Justice.

A. Dewey Richards, M.D. (the "Seller") appeals from the judgment entered in the Superior Court (Penobscot County, *Browne, A.R.J.*) in favor of Harry Peddie, M.D., P.A., *et al.,* (the "Buyer"). The Seller asserts that the trial court erred in finding, "as a matter of law that the amounts collected by the [Buyer] from accounts receivable purchased by the [Buyer] from the [Seller] do not fall within the definition of 'net profit' in the parties' Non–Competition Agreement." Finding no error, we affirm the judgment.

The Buyer and Seller entered into a purchase and sale agreement providing that the Buyer would purchase from the Seller the assets of an urgent medical care facility. One of the assets purchased by the Buyer under this agreement was the Seller's accounts receivable. The parties also executed a Non–Competition Agreement (the "Agreement") providing that the Seller would refrain from participating in an urgent medical care facility in exchange for a percentage of the profits of the urgent care facility sold to the Buyer. Regarding the consideration given by the Buyer to the Seller, the Agreement reads, in pertinent part, as follows:

> In consideration of the agreement of [Seller] not to compete and his not competing, [Buyer] shall pay ... to [Seller] ... annually for a period of ten years a sum equal to the lesser of Fifty Thousand Dollars ($50,000.00) **or fifty percent of the net profits of the operation of an urgent medical care facility by ... [Buyer] from the real estate conveyed by [Seller] to [Buyer] this date or elsewhere....**

**As used herein, the term "net profit" is defined as follows:**

> **Actual cash receipts from the rendering of medical services or the sale of medicine and supplies and rental income from the real estate less:**

(a) All ordinary and necessary operating expenses (excluding depreciation) incurred in the day-to-day operation of the business;

(b) A salary (and other direct benefits) to [Buyer]. . . .

(c) Interest and principal payments to institutional lenders and to [Seller] . . . resulting from the acquisition of the assets. . . .;

(d) Equipment purchases and building improvements . . .

(e) Any net operating losses from prior years (net operating losses will be calculated in the same manner as net profits for the purposes of this profit sharing arrangement).

.    .    .    .    .

(emphasis added).

The Buyer claims that this language does not require that the amounts collected from the accounts receivable purchased by the Buyer from the Seller be included in the "net profit" calculation. The Seller makes the counter argument—that the amounts collected from the accounts receivable must be included.

The Seller sued the Buyer alleging breach of the Agreement. On the day scheduled for trial, the parties stipulated that the Agreement was unambiguous. In light of this stipulation, the trial court found that "[b]ased upon the contractual language, . . . as a matter of law . . . the amounts collected by the [Buyer] from accounts receivable purchased by the [Buyer] from the [Seller] do not fall within the definition of 'net profit' in the parties' Non–Competition Agreement." The trial court directed a final judgment for the Buyer, and the Seller appeals.

■ Both parties stipulated to the trial court that the Agreement was unambiguous. The trial court, in its order, accepted this stipulation and did not make a finding concerning ambiguity. Neither party argues that the contract is ambiguous. Both argue, however, for differing and supportable interpretations. Under these circumstances the parties' stipulation was the equivalent of a submission of a factual issue (the meaning of an ambiguous contract) to the court, coupled with a representation that neither side would offer extrinsic evidence. The court deter-

mined that "actual cash receipts" do not include the monies received by the Buyer from its collection of the accounts receivable purchased by the Buyer from the Seller. We review a factual determination for clear error and affirm if there is competent evidence to support it. *Titcomb v. Saco Mobile Home Sales, Inc.,* 544 A.2d 754, 757 (Me.1988). The court's determination was not clear error.

The entry is:

Judgment affirmed.

All concurring.