Frederick TITCOMB and Kent Lewis
d/b/a Titcomb & Lewis

v.

SACO MOBILE HOME SALES, INC.

Supreme Judicial Court of Maine.

Argued June 13, 1988.
Decided July 26, 1988.

Donald Carter, Kettle, Carter, Henegar, Levandoski & Anderson, William L. Vickerson (orally), Levenson & Vickerson, Portland, Heidi E. Johnson, Heidi E. Johnson Legal Offices, Westbrook, for plaintiffs.

David R. Ordway (orally), Ordway & Delicata, Biddeford, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

Defendant Saco Mobile Home Sales, Inc., appeals a judgment entered by the Superior Court (Cumberland County) on a jury verdict awarding $10,000 to plaintiffs Frederick Titcomb and Kent Lewis d/b/a Titcomb & Lewis, for their substantial performance of an agreement to obtain a real estate subdivision permit for defendant from the Planning Board of the City of Saco. That judgment reflected verdicts reached by two juries: The first in March 1986 established defendant's liability to plaintiffs and awarded damages of $10,000, and, after the Superior Court had ordered a new trial on damages only, the second in July 1987 again awarded plaintiffs $10,000. We reject defendant's appellate contentions attacking the findings of the first jury. Because we find sufficient evidence in the record to support the damages awarded by that first jury, on plaintiffs' cross-appeal we vacate the order for a new trial and remand for the Superior Court to reinstate the initial damages award and to enter judgment *nunc pro tunc* thereon.

During the 1970s when this dispute arose, plaintiffs were in the business of developing subdivision plans for landowners interested in obtaining municipal subdivision permits. In the spring of 1975 an employee of plaintiffs contacted Gordon O'Donnell, president of Saco Mobile Home Sales, Inc., to see if the company was interested in developing a 14–acre lot it owned in Saco. Although skeptical about whether plaintiffs could get a subdivision permit for the project, defendant paid plaintiffs $1,000 for a feasibility study of the lot's subdivision potential. When that study produced positive results, the parties agreed that plaintiffs would develop a subdivision plan and attempt to obtain a permit for the plan from the Planning Board. That agreement was set down in writing at that time but that document has since been lost. The parties, although agreeing that a written contract once existed, disagree as to whether their agreement expressly conditioned defendant's obligation to pay for plaintiffs' services on plaintiffs' own personal success in obtaining the subdivision approval or simply on the issuance of the permit by the Planning Board following plaintiffs' substantial performance of the work leading up to that issuance.[1]

---

1. At the second trial on the issue of damages, the parties also sharply disagreed about the agreed measure of compensation for plaintiffs' services. Since we are vacating the Superior Court's decision to order that new trial, and since the parties did not contest at the first trial what measure of compensation they had agreed

After entering into the contract plaintiffs began work on the project, creating a survey plan and attending numerous meetings of the Board. The project bogged down, however, during the spring of 1977 because of plaintiffs' inability to provide the Board with a satisfactory drainage plan for the site. After a meeting between the parties in the summer of 1977—about the substance of which the parties also disagree—plaintiffs suspended their efforts to obtain the permit. The Planning Board, however, on February 20, 1979, gave final approval to the subdivision plan for the site as it had been modified by an engineer who, unaffiliated with plaintiffs, had been hired by defendant to resolve the drainage problem.

On March 31, 1982, plaintiffs filed in the Superior Court a two-count complaint seeking damages for breach of contract or in the alternative for unjust enrichment.[2] After two years of inactivity by the parties, the Superior Court on June 18, 1984, granted plaintiffs' motion to retain the case on the pending docket. Following an extensive period of discovery the case was set for trial on March 17, 1986. On March 14 defendant moved for a continuance because of the absence of certain witnesses; the court denied the motion the same day. The case went to trial on March 18, and on March 19 the jury returned a verdict finding specially that the contract was not contingent on plaintiffs' full performance of its terms, that plaintiffs had in fact substantially performed under the contract, that they had not voluntarily withdrawn from the contract, and that plaintiffs' damages amounted to $10,000. On March 20 the court entered a judgment for plaintiffs on that first jury verdict.

Defendant made a timely motion for a new trial, which the court granted solely on the issue of damages. That new trial took place on July 6–7, 1987, and the jury again returned a $10,000 damages award. Defendant appealed and plaintiffs cross-appealed.

## I.

As an initial matter defendant contends that the presiding justice at the first trial erroneously allowed the jury first to determine the substance of the disputed agreement without being provided the original document, and second to resolve as a factual matter whether the parties intended the contract to allow payment even if plaintiffs did not personally obtain the subdivision approval for defendant from the Saco Planning Board. We find no error in either ruling by the presiding justice, let alone the obvious error defendant is required to show because of its failure to call either of the alleged errors to the trial court's attention. *See Hull v. L & A Montagnard Social Club, Inc.*, 498 A.2d 597, 598 (Me. 1985); *Dongo v. Banks*, 448 A.2d 885, 889 (Me.1982).

■ On the first point, M.R.Evid. 1002 establishes that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Rule 1004 sets out a number of exceptions, the only one at issue here being for when "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith...." M.R.Evid. 1004(1). *See also Graybar Elec. Co. v. Sawyer*, 485 A.2d 1384, 1387 (Me.1985). Here the parties agree that in 1975 they entered into the written contract that was the subject of the lawsuit. As to what became of that contract, Kent Lewis testified that he was unable to find his copy and that when he asked Gordon O'Donnell, president of Saco Mobile Home Sales, for the document, he stated that he also could not find it. That uncontradicted testimony was adequate under Rule 1004(1) to establish that the original document had been lost other than through plaintiffs' bad faith. The presiding justice therefore correctly allowed plaintiffs to prove the content of that lost document through the oral testimony of

on in the contract, we are not concerned here with that issue.

**2.** At the close of the first trial plaintiffs withdrew their unjust enrichment claim and went to the jury only on the alleged breach of contract.

those familiar with it. *See* Field & Murray, *Maine Evidence* § 1004.0 (1987).

On defendant's second unpreserved contention, we determine that the court properly sent to the jury, rather than reserving for itself as a legal issue, the question whether the contract by its terms required plaintiffs to perform fully its requirements before receiving payment, or whether plaintiffs could recover simply for their substantial performance of the contract—in other words, whether the contract was entire or severable. It is clear that "[t]he proper interpretation of ambiguous contractual language is to be determined by the trier of fact," *Hare v. Lumbermens Mut. Cas. Co.*, 471 A.2d 1041, 1044 (Me. 1984), although the court reserves for itself as a question of law whether a contract provision is or is not ambiguous. *Pelletier v. Jordan Assoc.*, 523 A.2d 1385, 1386 (Me. 1987). Here the court properly determined that an ambiguity existed in the contract terms and allowed the jury to resolve that ambiguity on the basis of the trial testimony.

The parties recognize that the central dispute in the case is whether the contract required plaintiffs to obtain the permit fully by their own efforts as a condition to being paid, or whether the contract permitted payment if plaintiffs substantially performed the work necessary for permit approval despite the fact that others actually completed the final aspects of the project. Since the parties did not agree on which statement of their contractual obligations accurately reflected their agreement, and since the document setting forth the terms of that agreement had been lost, an ambiguity as a matter of law existed on that point, and the court properly allowed the jury to resolve the ambiguity based upon the testimony of witnesses. *Cf. Dehahn v. Innes*, 356 A.2d 711, 716 (Me.1976) (severability of an oral contract is a question of fact for factfinder).

## II.

Defendant also objects that insufficient evidence supports the following three factual determinations made by the first jury in its special verdict: (1) that the contract allowed recovery simply for plaintiffs' substantial performance of its terms, (2) that plaintiffs had in fact substantially performed the contract's terms, and (3) that plaintiffs had not voluntarily withdrawn from the contract. Each of those determinations is a factual matter properly reserved in this case to the jury. We review those determinations only for whether competent record evidence supports them, and here hold that it does. *See Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981).

As to the first disputed question of fact, the record evidence shows the following: Kent Lewis testified that the agreement called for plaintiffs to be paid "upon approval of the subdivision." He denied that the agreement required plaintiffs personally to obtain the permit. An employee for defendant testifying at trial agreed that "if Mr. O'Donnell got his subdivision, then he would pay a fee for Titcomb & Lewis." That evidence, provided by witnesses trying to recall an agreement entered into eleven years earlier, adequately supports the jury's finding that the contract conditioned payment for plaintiffs' services not on their personal acquisition of the subdivision permit for defendant, but only on their substantial completion of the work necessary to obtain that permit.

The evidence also supports the jury's finding of substantial performance. After entering into the agreement in the spring of 1975, plaintiffs commenced their survey plan of the site. They had ten to fourteen 60–foot test pits dug to study the suitability of the soil for the development. A perimeter examination was done to establish the topography of the site and an engineering sketch was also made of the property. Lewis testified that he took that survey plan to the Planning Board in the fall of 1975, and over the next year and a half he attended the Board's meetings on practically a monthly basis. Each time he attended, the Board would raise new problems with the plan, which in turn Lewis would address for the next meeting. By the spring of 1977 it was clear that the problem holding up approval was the ab-

sence of a satisfactory drainage plan. That problem was discussed at the meeting between the parties in the summer of 1977, after which plaintiffs put their efforts on hold. Testimony at the first trial also made clear that the plan finally approved by the Board used plaintiffs' survey plan but included a drainage system developed by a different engineer. That evidence would allow the jury rationally to conclude that plaintiffs substantially performed their duties under the contract. *See F.A. Gray, Inc. v. Weiss,* 519 A.2d 716, 717 (Me.1986).

■ Finally, competent evidence supports the finding that plaintiffs did not voluntarily withdraw from the agreement. After defendant in 1975 hired plaintiffs to create the subdivision plan, the parties in the summer of 1977 met and discussed the problems holding up approval of the plan. At that meeting, Lewis described the Planning Board's resistance to their drainage plans but stated that a new plan in the process of development would likely be approved. O'Donnell objected to the cost of that new plan, and defendant's attorney at the meeting suggested that he might be able to resolve the matter "from a legal point of view." When Lewis called defendant's attorney four months later to find out what progress he had made, the attorney stated, "I'm still in the process of resolving this problem, I will get back to you." He never did, and the next significant contact between the parties was in January 1979 when Lewis received a letter from O'Donnell asking him to attend the January 23 Planning Board meeting at which plaintiffs' subdivision proposal as modified by another engineer hired by defendant was presented and ultimately approved. Given that testimony the jury rationally could have found that at defendant's request plaintiffs suspended their efforts to obtain the subdivision permit, and then only while awaiting progress by defendant's attorney to achieve a legal solution to the drainage problem. Competent evidence thus supports the jury finding that plaintiffs did not voluntarily withdraw from the project.

## III.

■ Having found defendant liable to plaintiffs for work substantially performed under the May 1975 contract, the first jury awarded damages of $10,000 for the reasonable value of plaintiffs' services. It was this award that the Superior Court set aside, ordering a new trial limited to the damages question. Because adequate record evidence at the first trial supported the jury's damages award, we reinstate the damages award of the first trial.

We do not require a wronged party to prove the damages he has suffered to a mathematical certainty, but instead insist only that his claimed damages "be grounded on established positive facts or on evidence from which their existence and amount may be determined *to a probability." Decesere v. Thayer,* 468 A.2d 597, 598 (Me.1983) (quoting *Michaud v. Steckino,* 390 A.2d 524, 530 (Me.1978)) (emphasis added). We will set aside an award of damages on appeal only when the record presents no rational basis by which the factfinder could have arrived at the amount awarded. *See Lawrence v. Saunders,* 539 A.2d 1102, 1103 (Me.1988).

At the first trial Lewis testified that he told O'Donnell when they met to discuss the drainage problem in the summer of 1977 that plaintiffs had $10,000 involved in the project up to that time and that the costs could go $2,000 higher. Lewis testified that O'Donnell made no objection to that amount. At trial Lewis estimated that the cost of the project was between $500 and $2,000 per lot. Because that testimony provided the requisite rational basis upon which the jury could have based its $10,000 damages award, the Superior Court erred in setting that award aside and ordering a new trial on damages.

## IV.

■ Finally, we reject defendant's contention that the Superior Court abused its discretion by denying defendant's motion for continuance made just three days before the date set for the first trial. In support of that motion defendant's trial attorney averred by affidavit that he had

just discovered that two of his "key" witnesses, the attorney who sat in at the July 1977 meeting between the parties and the engineer who designed the approved drainage plan, would be absent from the state on the scheduled trial date. Although trial courts should attempt when possible to accommodate motions for continuance when made in accordance with the requirements of M.R.Civ.P. 40(b)–(c) and when reasonably justified by the moving party, we nevertheless review the court's denial of the motion only for abuse of discretion. *See Farrell v. Theriault,* 464 A.2d 188, 191 (Me.1983).

Here, however, defendant failed to comply with the Rule 40(c) requirement that when a motion for continuance is based on the absence of a material witness, the moving party must in his affidavit set forth the "witness' expected testimony and the basis of such expectation." Since defendant provided the court with no description of the expected testimony of the missing witnesses, the court did not abuse its discretion when it denied that motion.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment as of March 20, 1986, for plaintiffs against defendant in the amount of $10,000 with interest and costs.

All concurring.