## Joy W. FOSTER

v.

## Charles K. FOSTER, Jr.

Supreme Judicial Court of Maine.

Argued March 3, 1992.

Decided June 26, 1992.

Michael L. Ross (orally), Ellsworth, Martha Harris, Paine, Lynch & Harris, Bangor, for plaintiff.

James C. Hunt, Elizabeth A. Williams (orally), Robinson, Kriger, McCallum & Greene, Portland, Lewis V. Vafiades, Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Chief Justice.

On plaintiff Joy Foster's appeal we consider the application of the parties' premarital agreement to their divorce proceedings. In its divorce order, the Superior Court (Hancock County, *Browne, A.R.J.*) applied the agreement and awarded plaintiff $50,000 in lieu of her marital property rights. We conclude that the agreement addresses the disposition of the marital estate only in the event of defendant Charles Foster's death, and was improperly applied by the Superior Court. We vacate the judgment.

The parties were married in 1977 and have two minor children. Both parties had been previously married, and defendant had adult children by his first marriage. About a month before the marriage,

plaintiff signed an agreement that recited her desire to release dower and all other rights "which, by reason of the marriage, she may acquire in the property or estate of" defendant. The agreement provided for payment to plaintiff of $50,000 in the event of defendant's death.

Although the precise language of the agreement providing for the $50,000 payment specifically conditions that payment on plaintiff surviving Foster "as his lawful widow," defendant argues that the agreement read in its entirety releases plaintiff's rights in his property in the event of divorce. Specifically, he relies on the introductory paragraphs of the agreement reading as follows:

> WHEREAS, Foster desires to make a reasonable and sufficient provision for [plaintiff] in release of and in full satisfaction of all rights which, after the solemnization of their marriage, she might or could have by reason of the marriage in the property Foster now has or may hereinafter acquire or in his estate upon his death, and

> WHEREAS, [plaintiff] desires to accept this provision in lieu of all rights which she would otherwise acquire by reason of the marriage in the property or estate of Foster....

Further, he contends that the payment portion of the agreement contains language that addresses both defendant's death and other circumstances:

> [Plaintiff] shall accept the payment provided in paragraph 2 [$50,000] in release and full satisfaction of all rights which, by reason of the marriage, she may acquire in the property or estate of Foster, and in consideration thereof she does hereby waive and relinquish all rights which, as widow of Foster, she would otherwise acquire....

██ It is a well established principle that a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished. *See Baybutt Constr. Corp. v. Commercial Union Ins.*

*Co.*, 455 A.2d 914, 919 (Me.1983). Applying this principle, we hold that the agreement provides only for certain inter vivos transfers of property and inheritance rights. All of the numbered paragraphs deal with plaintiff's rights as widow of defendant, and use terms such as dower, distributive share, and descent. Most importantly, the paragraph establishing plaintiff's entitlement to the $50,000 expressly provides for payment only if plaintiff survives defendant, "[s]uch sum [to] be paid to [plaintiff] as soon after the death of [defendant] as may be practicable, but in no event later than one year after his death." The broad language of the introductory clauses to the agreement does not expand the actual settlement provisions of the agreement. *See Estate of Berzinis*, 505 A.2d 86 (Me.1986) (antenuptial agreement did not refer to death but used terms suggestive of divorce, so did not apply to wife's inheritance rights); *Parkhurst v. Gibson*, 573 A.2d 454 (N.H.1990) (rejecting attempt to construe the general language in the "Whereas" clause to extend the application of a premarital agreement to divorce where the agreement did not include the words "divorce," "alimony" or "property settlement").

Plaintiff additionally challenges the Superior Court's awards of child support and attorney's fees; we find no abuse of the court's discretion in either of these awards. Defendant's contention on cross-appeal that the Superior Court erred in dismissing his counterclaim alleging cruel and abusive treatment is also without merit.

The entry is:

Judgment vacated. Remanded to the Superior Court for proceedings consistent with this opinion.

ROBERTS and COLLINS, JJ., concurring.

ROBERTS, Justice, concurring.

I join in the court's decision to vacate the divorce judgment. I write separately to express an additional reason for vacating the judgment.

In her complaint, Joy Foster asks *inter alia* for an award of alimony. That request was denied without any express reasoning, but presumably on the basis of the premarital agreement. Nowhere in the operative language or in the recitals does the agreement refer to alimony. I am unwilling to extend the reference to rights acquired by marriage in "the property or estate" of Charles Foster to include Joy Foster's claim for alimony. As a result, even if the divorce court were correct in finding the agreement applicable to the divorce situation, nothing in that agreement can reasonably be construed as a waiver of any claim for alimony.

CLIFFORD, Justice, with whom GLASSMAN, Justice, joins, dissenting.

I respectfully dissent. I agree with the court that the Superior Court did not abuse its discretion in its award of child support and the amount of attorney fees it ordered to be paid by Charles Foster. I also agree with the court that defendant's cross-appeal is without merit. In my view, however, we should not review the premarital agreement *de novo*, as the court has done, but rather should defer to the Superior Court's construction of the agreement and affirm the judgment.

Giving effect to the intent of the parties is the cardinal rule of construction of contracts. If the contract is unambiguous (the question of whether it is ambiguous being a question of law), the trial court's interpretation on the basis of the four corners of the contract is a question of law reviewable *de novo* on appeal. *Pelletier v. Jordan Assocs.*, 523 A.2d 1385, 1386 (Me.1987). If, on the other hand, the contract is ambiguous and extrinsic evidence relevant to the interpretation of the agreement is before the court, the interpretation is a question of fact reviewable under a deferential clear error standard. *Titcomb v. Saco Mobile Home Sales*, 544 A.2d 754, 757 (Me.1988); *see Estate of Wilson*, 542 A.2d 838, 839 (Me.1988). Such is the case here.

The agreement's preamble provides:

WHEREAS, Foster desires to evoke a reasonable and sufficient provision for [then Joy] Mitchell in release of and in full satisfaction of *all rights which, after the solemnization of their marriage, she might or could have by any reason of the marriage in the property* which Foster has or may hereafter acquire *or in his estate* upon death, and

WHEREAS, Mitchell desires to accept this provision in lieu of *all rights which she would otherwise acquire by reason of the marriage in the property or estate* of said Foster....

(Emphasis added). In Paragraph 1 of the agreement, Joy Mitchell gives up her dower rights to Foster's real estate and agrees to execute any deeds or other instruments to allow Foster to transfer his real estate free from any claim of hers. Paragraph 3 provides that Joy Mitchell releases all rights "which *by reason of the marriage* she may *acquire in the property or estate* of Foster," as well as her rights as a widow. Such language at the very least creates an ambiguity as to whether the parties intended the $50,000 payment to Joy Foster to be in lieu of any claim she may have to alimony or Foster's property in the event of a divorce. *See Brackett v. Middlesex Ins. Co.*, 486 A.2d 1188, 1189 (Me.1985); *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me.1983) (contract ambiguous if reasonably susceptible of different interpretations).

Implicit in the Superior Court decision, as shown by the receipt of extrinsic evidence on the validity and intent of the agreement, is a determination that the premarital agreement is ambiguous. That evidence showed that Joy Foster had been divorced twice after marriages of short duration, and that Charles Foster had been through a divorce involving substantial alimony and division of property. There was direct testimony from the drafter of the agreement, Charles Foster's attorney, that the agreement was drafted to allow Charles Foster to convey his property freely without his wife's signature, and to provide for the possibility of a divorce. The Superior Court considered that evidence, upheld the agreement, and found the agreement applicable to the divorce. Because the agreement is ambiguous and the Superior Court

considered extrinsic evidence in construing it, we should review that decision for clear error. *Titcomb*, 544 A.2d at 757. I discern no such error, and would affirm the divorce judgment.