2004 ME 56

**Edward A. ACKERMAN**

v.

**Frances E. YATES.**

Supreme Judicial Court of Maine.

Submitted on briefs: Feb. 26, 2004.

Decided: April 22, 2004.

---

Robert J. Rubin, Esq., Rubin & Strout, P.A., Rockport, for plaintiff.

Kenneth P. Altshuler, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Frances E. Yates appeals from a divorce judgment entered in the Superior Court (Knox County, *Studstrup, J.*). She challenges the Superior Court's interpretation of a premarital agreement, and contends that the court erred when it denied her motion to amend the judgment to award her the parties' 1999 state income tax refund. Edward A. Ackerman cross-appeals, contending that the Superior Court abused its discretion when it determined the amount of monthly spousal support to which he is entitled, failed to retroactively award the spousal support to the date the complaint was filed, failed to award him the entire amount of attorney

fees he requested, and failed to divide the parties' 1999 federal income tax refund equally. Finding no error, or abuse of discretion, we affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] Yates, who is currently in her mid-fifties, and Ackerman, who is currently in his early-sixties, were married in 1979. During the marriage, the parties supported themselves with income from investments. Ackerman's individual stock portfolio is worth approximately one million dollars, and creates income totaling approximately $12,000 per year. Yates's stock portfolio has a value in excess of fourteen million dollars, and produces income of approximately $245,000 per year.

[¶ 3] During their marriage, Ackerman and Yates lived in Camden in a debt-free home that is owned by Yates and is worth approximately $1.5 million dollars. Ackerman purchased a home in Camden after he and Yates separated. The home is worth approximately $155,000 and does not have a mortgage. The parties also accumulated several other properties and vehicles during their marriage. It was Yates, however, who provided the family's living expenses, and also gave Ackerman $1800 a month in spending money.

[¶ 4] Ackerman has experienced some health problems, and he testified that he cannot maintain steady employment because he does not know when he will have good days and when he will have bad days.

[¶ 5] In September 2000, Ackerman filed for divorce. Yates filed a motion for a bifurcated hearing, seeking a separate hearing and order determining the validity and effect of a premarital agreement the parties signed in 1978. The Superior Court (*Marden, J.*) concluded that the premarital agreement is unambiguous and constituted a "waiver of each party in and to the property of the other party accruing to them by nature of the marital relationship." Because, reasoned the court, spousal support was not a matter of property distribution, the agreement did not govern spousal support.

[¶ 6] After a hearing at which only Ackerman and Yates testified, the Superior Court issued a divorce judgment awarding each party the "real and personal property which currently appears solely in his or her name or is presently in his or her possession." This portion of the divorce judgment was based on the court's previous determination of the validity and effect of the premarital agreement. The court, however, did award the 1999 federal income tax refund of $135,000 to Yates, although it was in Ackerman's name and possession. Yates had presented evidence at trial that the refund was nonmarital property because the overpayment that was the source of the refund had been paid from her nonmarital account.

[¶ 7] The Superior Court rendered its decision regarding spousal support after thoroughly considering the factors enumerated in 19–A M.R.S.A. § 951–A(5) (Supp.2003). The court concluded that although Ackerman is quite talented, given his age, lack of employment history, and medical condition, there is only a remote chance of meaningful employment in the future. Although the court concluded that the approximately $20,000 a year Ackerman was living on for the prior two years was inadequate, the court was unpersuaded by Ackerman's contention that in order to maintain a reasonable standard of living, Yates should pay Ackerman $135,000 a year in spousal support. Instead, the court ordered Yates to pay Ackerman $6500 a month ($78,000 a year) in general spousal support, and made the award retroactive to the date of the divorce hearing.

[¶ 8] Finally, with regard to attorney fees, the court concluded that although the parties had the resources to pay their own attorney fees, Yates was in a better position to do so, and ordered Yates to pay $10,000 of Ackerman's requested $17,476.25 in attorney fees.

[¶ 9] Yates filed a motion to amend the judgment pursuant to M.R. Civ. P. 52(b), requesting that the court award her the entire 1999 state income tax refund. The Superior Court denied the motion, concluding that the record was silent with regard to the state refund. Both Yates and Ackerman subsequently appealed.

## II. DISCUSSION

### A. Yates's Appeal

#### 1. The Premarital Agreement

[¶ 10] Yates contends that the Superior Court improperly concluded that the premarital agreement the parties signed does not cover spousal support. The determination of whether a contract is ambiguous is a matter of law and is reviewed de novo. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993. If the contract is unambiguous, the interpretation of the contract is also a question of law. *Id.* We look at the entire instrument when construing the contract and attempt to give effect to all of its provisions; an interpretation that renders a provision meaningless is avoided. *Id.* ¶ 12, 814 A.2d at 993. Finally, language in the contract is given its plain meaning. *Id.* ¶ 13, 814 A.2d at 993.

[¶ 11] The operative provisions of the premarital agreement are as follows:

### Recitals

. . . .

2. In anticipation of such marriage, Edward and Frances desire by an Ante–Nuptial Agreement to fix and determine the rights of each of them in and to certain real and personal property and other matters hereinafter described, now owned by them or either of them or to which they or either of them may become entitled.

. . . .

### Covenants

. . . .

3. Except as otherwise set forth herein, Edward shall not have any claim or rights to a share of the personal property or estate of Frances which she now owns or may hereafter acquire, specifically waiving any and all claims that may accrue to him by reason of the marriage which Edward and Frances anticipate will be solemnized.

. . . .

Paragraph four is reciprocal to paragraph three. Ackerman relies on *Foster v. Foster*, 609 A.2d 1171 (Me.1992) for the proposition that because the premarital agreement does not mention alimony, spousal support, or maintenance, it should not be interpreted as covering that issue. In *Foster*, we concluded that the premarital agreement under consideration addressed the disposition of marital property only in the event of death. *Id.* at 1171. Important to this conclusion was that all of the numbered paragraphs dealt with the ex-wife's rights as a widow of the ex-husband and used the terms dower, distributive share, and descent. *Id.* at 1172. Additionally, the paragraph establishing the ex-wife's entitlement to $50,000 was conditioned on her surviving her ex-husband. *Id.* We concluded that the broad language in the introductory provisions did not expand the settlement provisions of the agreement. *Id.*

[¶ 12] The second recital in the Ackerman–Yates premarital agreement

could be construed as covering spousal support because of the following broad language: "fix and determine the rights of each of them in and to certain real and personal property and *other matters hereinafter described.*" (Emphasis added.) Nonetheless, the coverage of covenant three is limited to property and does not address spousal support. Covenant three abolishes any claim or right Ackerman may have to "a share of the personal property or estate of Frances which she now owns or may hereafter acquire, specifically waiving any and all claims that may accrue to him by reason of the marriage." Contrary to Yates's contention, the language in the clause following "specifically" operates to explain, not expand, the first clause, and explains that Ackerman is waiving rights he may have to a share of Yates's personal property or estate that have accrued by reason of the marriage. Because broad language contained in an introductory paragraph does not expand the actual settlement provisions of an agreement, *Foster*, 609 A.2d at 1172, the language in the second recital does not expand the scope of covenant three, the actual settlement provision, which governs property only.[1] Accordingly, because the premarital agreement is unambiguous, the Superior Court did not err when it concluded that the agreement did not govern the issue of spousal support.[2]

### 2. The 1999 State Income Tax Refund

■ [¶ 13] Yates further contends that the Superior Court erred when it concluded that the record was silent with regard to the 1999 state income tax refund. Because Yates did not offer any testimony regarding the state refund, and did not take any steps to raise the issue in the Superior Court until she filed her motion to amend the judgment pursuant to M.R. Civ. P. 52(b), the Superior Court could have properly concluded that she failed to present evidence on the issue. *See Sanders v. Sanders*, 1998 ME 100, ¶ 11, 711 A.2d 124, 127. Accordingly, the Superior Court did not err when it denied Yates's motion to amend pursuant to M.R. Civ. P. 52(b). *See Dep't of Envtl. Prot. v. Woodman*, 1997 ME 164, ¶¶ 2–3, 697 A.2d 1295, 1297 (affirming the denial of a motion to amend when the defendants raised an issue for the first time in the motion).

### B. Ackerman's Appeal

#### 1. Standard of Living

■ [¶ 14] Ackerman contends that the Superior Court failed to consider the standard of living Ackerman enjoyed during the marriage when it determined the amount of spousal support to which Ackerman is entitled. Contrary to Ackerman's assertion, the court did consider the standard of living Ackerman enjoyed during

---

1. The parties agree that the Uniform Premarital Agreement Act, 19–A M.R.S.A. §§ 601–611 (1998), does not apply to this case because of the Act's effective date. The Act permits parties to "contract with respect to ... [t]he modification or elimination of spousal support." *Id.* § 604(4). Pursuant to the Act, in order for an agreement to be enforceable, the "agreement must be in writing and signed by both parties." *Id.* § 603. We do not address whether agreements that are controlled by the Act must specifically mention alimony, maintenance, or spousal support in order to modify or eliminate spousal support.

2. Although Yates asserts there is extrinsic evidence that the parties intended that the agreement govern spousal support, "[t]he interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me.1983). "Once an ambiguity is found then extrinsic evidence may be admitted and considered to show the intention of the parties." *Id.*

the marriage. Additionally, although the parties' standard of living during the marriage is a factor in awarding spousal support, 19–A M.R.S.A. § 951–A(5)(N) (Supp. 2003), nothing in the statute requires that the parties must enjoy the exact same standard of living after the divorce as they did during the marriage. *See Arey v. Arey*, 651 A.2d 351, 354–55 (Me.1994) (upholding an award of $1 per year nominal support although there was evidence of a higher than average standard of living during the marriage).

[¶ 15] Here, because the court thoroughly considered all of the factors listed in section 951–A(5), and there is evidence to support the court's conclusion that $135,000 a year in spousal support would be excessive, the Superior Court did not act beyond its discretion when it awarded Ackerman $6500 a month in spousal support.

## 2. Retroactivity of Spousal Support

[¶ 16] Ackerman further contends that because the Superior Court found that the amount of money Ackerman had been living on after the separation was inadequate, the court abused its discretion when it awarded him spousal support from the date of the divorce hearing and not from the date of the complaint.

[¶ 17] The court could have found that awarding spousal support from the date of the complaint would be excessive just as it found that Ackerman's requested annual award was excessive. Accordingly, the Superior Court did not act beyond its discretion when it awarded Ackerman spousal support from the date of the hearing and not from the date of the complaint. *See Miele v. Miele*, 2003 ME 113, ¶ 10, 832 A.2d 760, 763.

## 3. Attorney Fees

[¶ 18] Ackerman also contends that the Superior Court abused its discretion when it ordered Yates to pay only $10,000 of his attorney fees because in order to pay the remainder, he would have to sell some of his assets, which he should not be forced to do when Yates was in a far better position to pay those fees.

[¶ 19] Our decisions in *Miele* and *Clum v. Graves* demonstrate that it is proper for a trial court to consider not only the parties' income, but also their other assets when determining the relative financial ability of the parties to absorb the costs of litigation. 2003 ME 113, ¶ 16, 832 A.2d at 764; 1999 ME 77, ¶ 18, 729 A.2d 900, 907. There is substantial evidence in the record supporting the Superior Court's conclusion that "both parties can clearly pay their own attorney's fees." Accordingly, the Superior Court did not act beyond its discretion when it limited the award for Ackerman's attorney fees to $10,000.

## 4. The 1999 Federal Income Tax Return

[¶ 20] Ackerman's final contention is that the Superior Court abused its discretion when it awarded Yates the entire amount of the 1999 federal income tax refund because Yates's conduct in splitting the 1999 state income tax refund waived any claim she had in the federal refund for that year. Ackerman did not raise this issue before the Superior Court. This issue, therefore, is not preserved, *Sanders*, 1998 ME 100, ¶ 11, 711 A.2d at 127, and we review for obvious error, *Morey v. Stratton*, 2000 ME 147, ¶ 10, 756 A.2d 496, 499. Even if the issue was preserved, contrary to Ackerman's contention, Yates has consistently insisted upon her right to the entire federal refund. Accordingly, the Superior Court did not err when it award-

ed Yates the entire amount of the 1999 federal income tax refund.

The entry is:

Judgment affirmed.