STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. CV -08-391
                                        NM- C uM- 2/ /2011

KOHL'S DEPARTMENT
STORES,

           Plaintiff

      v.                                ORDER ON MOTIONS FOR
                                        SUMMARY JUDGMENT
W/S ALFRED ROAD
PROPERTIES LIMITED
LIABILITY COMPANY
And S.W.COLE
ENGINEERING, INC.,

           Defendants


     Defendant/cross-claim defendant S.W. Cole Engineering, Inc. has filed a motion

for partial summary judgment on counts I and II of defendant/cross-claim plaintiff

W/S Alfred Road Properties, LLC's cross-claim.  S.W. Cole asks the court to determine

that pursuant to the contract between S.W. Cole and Alfred, Alfred's recovery on its

cross-claim is limited to the greater of $50,000.00 or the fees accrued by S.W. Cole under

the contract.  S.W. Cole argues that Alfred is not entitled to equitable contribution or

indemnity.  S.W. Cole also asserts that the limitation on liability clause in the contract is

enforceable against Alfred, notwithstanding the indemnity provision of the contract.

     Defendant/cross-claim plaintiff Alfred has filed a cross motion for partial

summary judgment on counts I and II of its cross-claim.  Alfred also filed a motion for

partial summary judgment on count III of its cross-claim.  Alfred alleges that S.W. Cole

breached its contractual obligation to procure insurance by failing to obtain additional

insurance and by obtaining a "wasting" or "eroding" insurance policy.[1]

_____

[1] It is difficult to determine precisely what the parties ask the court to do.  In the "Conclusion"
of its first memorandum, S.W. Cole stated:

1

Factual Background

On October 2, 2002, Alfred entered into a Ground Lease Agreement with Kohl's Department Stores, Inc. for a retail department store in Biddeford, Maine. (Cross-Cl. Def.'s Supp. S.M.F. ("S.W. Cole's S.M.F.") ¶ 1.) The Ground Lease Agreement obligates Alfred to provide construction of Kohl's' building pad, including "[c]ompaction of the building area of Tenant's Tract." (S.W. Cole's S.M.F. ¶ 2.) Before Alfred executed the Ground Lease Agreement, it retained S.W. Cole to perform the geotechnical engineering services necessary for the preparation of the building pad area, which was ultimately leased to Kohl's. (S.W. Cole's S.M.F. ¶ 3.) At this time, S.W. Cole was working on four projects for Alfred's affiliated companies. (Cross-Cl. Pl.'s S. Add'l M.F. ("Alfred's S.A.M.F.") ¶ 14.)[2]

On August 28, 2002, John Corbett, who was a project manager for Alfred on the Kohl's project and was involved in the contract negotiations with S.W. Cole, signed a proposal, previously signed by S.W. Cole on August 15, 2002 (the "August 2002 agreement"). (S.W. Cole's S.M.F. ¶ 4, as qualified by Cross-Cl. Pl.'s Opp. S.M.F. ("Alfred's Opp. S.M.F.") ¶ 4; see also Alfred's S.A.M.F. ¶ 7, as qualified by Cross-Cl. Def.'s Rep. to Pl.'s S.A.M.F. ("S.W. Cole's R.S.M.F.") ¶ 7.) The August 2002 agreement

---

Based on the foregoing argument, Cross-Claim Defendant S.W. Cole Engineering, Inc. respectfully moves this Honorable Court for Partial Summary Judgment holding that pursuant to the contract between Cross-Claim Defendant S.W. Cole and Cross-Claim Plaintiff Kohl's Department Stores, Inc., Plaintiff Kohl's recovery on its Cross-Claim is limited to the greater of $50,000.00 or the fees accrued by Cross-Claim Defendant S.W. Cole under the contract.

S.W. Cole Mem. at 11.

Alfred "cross moves for partial summary judgment in its favor," on its own cross-claim. The issues and conclusions addressed in this decision apply to S.W. Cole's cross-claim as well.

[2] W/S. Development, LLC, S.R. Weiner & Associates, and Alfred are affiliated companies. (Alfred's S.A.M.F. ¶ 3.)

included S.W. Cole's standard contractual "Terms and Conditions."[3] (S.W. Cole's S.M.F. ¶ 4.)

The standard Terms and Conditions provided for a limitation on liability and for indemnification. Article 8 of the Terms and Conditions of the August 2002 agreement provides:

**Limitation of Liability**

Client expressly agrees that to the fullest extent permitted by law, its maximum aggregate recovery for claims against [S.W. Cole] and all of its employees, concerning [S.W. Cole's] services, including for negligence or breach of this agreement shall be either $50,000, or [S.W. Cole's] fee, whichever is greater. Client further expressly agrees that unless otherwise mutually agreed to in writing by both parties, all subsequent work performed by [S.W. Cole] on behalf of Client concerning the property covered by this agreement will be pursuant to an addendum to this agreement. This Limitation of Liability clause will extend to, and applies to, all subsequent work performed by [S.W. Cole] for Client for this property.

In the event that the Client does not wish to limit [S.W. Cole's] liability for this work, or subsequent work done under this project number, to the greater of $50,000 or [S.W. Cole's] services, [S.W. Cole] may agree to a higher limitation of liability if the parties mutually agree in writing to an increase in [S.W. Cole's] fee because of the higher risk [S.W. Cole] may assume.

(S.W. Cole's S.M.F. ¶ 5, Ex. B.) Article 10 of the Terms and Conditions provides:

**Indemnification Hold Harmless**

[S.W. Cole] agrees to indemnify and hold Client, its directors, shareholders, employees, and assigns harmless for all claims, damages and causes of action, to the extent such claims, damages and causes of action are based on or arise out of [S.W. Cole's] negligent acts, errors or omissions.

Client agrees to indemnify and hold [S.W. Cole], its directors, shareholders, employees, and assigns harmless for all claims, damages and causes of action, against [S.W. Cole] related to the performance of the

---

[3] Alfred argues that calling the August 2002 agreement a contract as of August 28, 2003 is "premature." (Cross-Cl. Pl.'s Rep. to Cross-Cl. Def.'s S.A.M.F. ("Alfred's R.S.M.F.") ¶ 6.) Alfred's dispute appears to be that the parties subsequently modified the August 2002 agreement and not that there was never a contract. (See id.; Alfred's R.S.M.F. ¶ 8.)

services in this Agreement, unless such claims are based on or arise out of [S.W. Cole's] negligent acts or omissions.

(S.W. Cole's S.M.F. ¶ 6, Ex. B.)

Pursuant to Article 8 of the August 2002 agreement, Mr. Corbett worked with S.W. Cole to negotiate an additional fee and to increase S.W. Cole's "professional liability" coverage to $3 million. (Alfred's S.A.M.F. ¶¶ 20-22, *as qualified by* S.W. Cole's R.S.M.F. ¶¶ 20-22.) Article 4 of the August 2002 agreement provides:

**Insurance**

[S.W. Cole] maintains worker's compensation insurance of a form and in the amount required by state law. [S.W. Cole] maintains general liability, automobile liability and professional liability coverage. Certificates for insurance coverage will be provided to the Client upon request and [S.W. Cole] will promptly notify the Client of any impending change in coverage. [S.W. Cole] shall comply with the Client's reasonable requests for special endorsements, additional limits, additional coverage, et al., providing these are available to [S.W. Cole], and Client renumerates [sic] [S.W. Cole] for the cost thereof.

(Alfred's S.A.M.F. ¶ 12.) Ultimately, Mr. Corbett and S.W. Cole agreed that S.W. Cole would increase its professional liability coverage to $3 million, in exchange for an additional fee. (Alfred's S.A.M.F. ¶¶ 19, 21-22, *as qualified by* S.W. Cole's R.S.M.F. ¶¶ 19, 21-22.) Alfred paid the additional fee on March 31, 2003. (Alfred's S.A.M.F. ¶ 24.)

Construction of the Kohl's store began in March 2004. (S.W. Cole's S.M.F. ¶ 7, Ex. C.) In the summer of 2006, Kohl's, through its agent, JGI Eastern, Inc., observed cracks in the elevated concrete floor slab. (S.W. Cole's S.M.F. ¶ 8, *as qualified by* Alfred's Opp. S.M.F. ¶ 8.) At some point, Kohl's determined that differential settlement of the store occurred. (S.W. Cole's S.M.F. ¶ 9.) Shortly after being made aware of potential problems with the Kohl's project in early September 2006, Alfred, through an affiliate, requested that S.W. Cole list proposals and contract documents issued for the project after being made aware of the potential problem with settling in order to compare the

4

list with the affiliate's file for the Kohl's project. (Alfred's S.A.M.F. ¶¶ 2, 4, *as qualified by* S.W. Cole's R.S.M.F. ¶¶ 2, 4.) Alfred also requested that S.W. Cole gather the documents defining the scope of S.W. Cole's work and liability for that work. (Id.) In response to the request, S.W. Cole faxed a list of the documents. (Alfred's S.A.M.F. ¶¶ 5-6, *as qualified by* S.W. Cole's R.S.M.F. ¶¶ 5-6.) The list of documents included several letters written after the August 2002 agreement, which Mr. Corbett had received on behalf of Alfred, dated August 15, 2002, September 13, 2002, January 9, 2003, January 22, 2003, and February 11, 2003 (collectively, "the letters"). (Alfred's S.A.M.F. ¶ 1, Exs. 47, 51, 54, 55 and 56.)

On July 3, 2008, Kohl's filed an eleven-count complaint against Alfred and S.W. Cole. Essentially, Kohl's alleges negligence (against S.W. Cole only), breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, and intentional misrepresentation, and seeks damages, including punitive damages. Alfred filed a cross-claim against S.W. Cole and alleges equitable contribution and/or indemnification (count I), breach of contractual indemnification (count II), and breach of contractual insurance procurement (count III). S.W. Cole filed a cross-claim against Alfred and alleges equitable contribution and indemnification (count I) and contractual indemnification (count II).

S.W. Cole claims that Alfred's claims for equitable contribution and/or indemnification fail as a matter of law. S.W. Cole also asserts that the unambiguous terms of the parties' contract limit S.W. Cole's liability for all claims by Alfred, including Alfred's claims for indemnification and contribution. Alfred claims that the Article 8 limitation does not apply to S.W. Cole's duty to indemnify Alfred for third-party claims arising from S.W. Cole's negligent acts. Alfred also argues that S.W. Cole breached its

contractual duty to procure additional insurance and by purchasing a "wasting" or "eroding" insurance policy.

DISCUSSION

I.     Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the nonmoving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See, e.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. A contested fact is "material" if it could potentially affect the outcome of the case. Inkel v. Livingston, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." Id. When the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

II.    Count I: Equitable Contribution and/or Indemnification

S.W. Cole asserts that Alfred's claim for equitable indemnification fails as a matter of law because such relief has never been recognized in Maine.[4] The Law Court noted that Maine "has never adopted [equitable indemnity] in purely non-contractual

---

[4] S.W. Cole initially claims that Alfred is not entitled to equitable contribution. In its reply to Alfred's opposition, S.W. Cole appears to abandon this claim. Maine has recognized equitable actions for contribution for nearly a century. See Thermos Co. v. Spence, 1999 ME 129, ¶¶ 15-17, 735 A.2d 484, 488 (describing the history of contribution as an equitable claim). As S.W. Cole appears to recognize, to the extent S.W. Cole and Alfred are found to be joint tortfeasors, an action for contribution remains.

6

situations but has constantly predicated responsibility on proximate causation." Roberts v. American Chain & Cable Co., Inc., 259 A.2d 43, 50 (Me. 1969); see also Emery v. Hussey Seating Co., 1997 ME 162, ¶ 8, 697 A.2d 1284, 1287 ("We need not decide today whether Maine will adopt equitable indemnity... because no issue involving that doctrine is generated by the facts of the present case."). This court need not determine whether equitable indemnity applies because Alfred's claim fails as a matter of law.

"The law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions." 41 Am. Jur. 2d Indemnity § 20, at 706 (1968); accord Northeast Bank of Lewiston & Auburn v. Murphy, 512 A.2d 344, 351 (Me. 1986) (in the absence of an express agreement indemnity is appropriate "'to do justice within the law so that one guilty of an active or affirmative act of negligence [or intentional act] will not escape liability, while another whose fault was only technical or passive assumes complete liability'") (quoting 41 Am. Jur. 2d Indemnity § 20, at 706 (1968)). Where there is a clear and unequivocal express agreement to indemnify, the court will not imply another intent. See Orsini v. F.W. Webb, No. CV-91-206, 1994 Me. Super. LEXIS 287, *6-7 (Me. Super. Ct., Pen. Cty., Jul. 21, 1994) (Mills, J.). In this case, S.W. Cole and Alfred expressly contracted to indemnify each other. (S.W. Cole's S.M.F. ¶ 6, Ex. B.) Therefore, S.W. Cole is required to indemnify Alfred to the extent that the claims by Kohl's arise out of S.W. Cole's negligent acts. (See id.)

III.   Count II: Breach of Contractual Indemnification

   a.   Cross-Claims for Indemnity and/or Contribution

S.W. Cole asserts that all claims against it, including claims for contribution and indemnity, are subject to an unambiguous limitation on liability clause in Article 8 of the August 2002 agreement. "The interpretation of an unambiguous contract is a

7

question of law." Reid v. Town of Mount Vernon, 2007 ME 125, ¶ 29, 932 A.2d 539, 546 (quoting Guilford Transp. Indus. v. Pub. Utils. Comm'n, 2000 ME 31, ¶ 13, 746 A.2d 910, 914). "When a contract is unambiguous, its construction is also a question of law." Richardson v. Winthrop Sch. Dep't, 2009 ME 109, ¶ 9, 983 A.2d 400, 403 (quotation omitted).

Article 8 of the August 2002 Agreement provides that "Client['s]... maximum aggregate recovery for claims against [S.W. Cole] and all of its employees, concerning [S.W. Cole's] services, including for negligence or breach of the agreement shall be either $50,000, or [S.W. Cole's] fee, whichever is greater."[5] (S.W. Cole's S.M.F. ¶ 5, Ex. B.) Based on the plain language of Article 8, the limitation on liability clause applies to claims by Alfred against S.W. Cole for negligence and breach of the agreement.

Article 8 does not limit S.W. Cole's liability for claims for contribution. "[T]he controlling issues for adjudication in a contribution action are those related to determination of liability to the original injured party." Thermos Co., 1999 ME 129, ¶ 21, 735 A.2d at 489 (citing In re N-500L Cases, 691 F.2d 15, 21 (1st Cir. 1982)). Under Maine law, "'the function of the court is not to make a new contract for the parties by enlarging or diminishing its terms, but is to ascertain the meaning and intention of the contract actually made.'" Jack v. Tracy, 1999 ME 13, ¶ 8, 722 A.2d 869, 871 (quoting Apgar v. Commercial Union Ins. Co., 683 A.2d 497, 500 (Me. 1996)). The plain language of the limitation of liability clause applies to claims by Alfred against S.W. Cole.

Additionally, the contract does not expressly limit S.W. Cole's liability for contribution. The right to contribution, though originating in equity, may be destroyed by agreement of the obligated parties. Spottiswoode v. Levine, 1999 ME 79, ¶ 23, 730

---

[5] In its brief, S.W. Cole claims that a limitation on liability clause is generally enforceable. (S.W. Cole's Mot. Partial Summ. J. at 6-9.) Alfred does not claim that this particular limitation on liability is unenforceable.

A.2d 166, 173 (discussing contribution between contract guarantors). Where a party "fail[s] to expressly limit [its] liability for contribution, although [it was] sophisticated enough to do so. . . [i]t would be inappropriate to judicially limit [its] contribution liability by implication." Id. ¶ 24, 730 A.2d at 173. Accordingly, Alfred's cross-claim for contribution is not limited by Article 8 of the August 2002 agreement.

Alfred asserts that Article 8 does not apply to Article 10 of the August 2002 agreement, which obligates S.W. Cole to indemnify Alfred.[6] Courts "interpret a contract according to the plain meaning of its language." Richardson, 2009 ME 109, ¶ 9, 983 A. 2d at 403. This court will interpret a contract to "avoid any interpretation that renders a provision meaningless." Id. (internal citation omitted); Ackerman v. Yates, 2004 ME 56, ¶ 10, 847 A.2d 418, 422. To do so, "[a]ll parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." Am. Prot. Ins. Co. v. Acadia Ins. Co., 2003 ME 6, ¶ 11, 814 A.2d 989, 993 (quoting Peerless Ins. Co. v. Brennon, 564 A.2d 383, 384-85 (Me. 1989)).

Article 10 states that "[S.W. Cole] agrees to indemnify and hold Client, its directors, shareholders, employees, and assigns harmless for all claims, damages and causes of action, to the extent such claims, damages and causes of action are based on or arise out of [S.W. Cole's] negligent acts, errors or omissions." (S.W. Cole's S.M.F. ¶ 6,

---

[6] S.W. Cole objects to Mr. Corbett's affidavit regarding the terms of the contract between S.W. Cole and Alfred and argues, among other things, that it is barred by the parol evidence rule. S.W. Cole Rep. Mem. at 5-6. "The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of an integrated written agreement." Handy Boat Serv., Inc. v. Prof'l Servs., Inc., et al., 1998 ME 134, ¶ 11, 711 A.2d 1306, 1308-09. If the contract language unambiguously indicates a fully integrated contract, no presentation or consideration of extrinsic evidence on the question of integration is permitted. See id. ¶ 11, 1309. The August 2002 agreement contains an unambiguous integration clause. (See S.W. Cole's S.A.M.F. ¶ 7, Ex. B, Section 15.4.) This court relies on the plain language of the integrated agreement.

9

Ex. B.) Article 10 does not reference Article 8 or include any language that would limit S.W. Cole's duty to indemnify Alfred. (Id.) Based on the unambiguous language of Article 10, S.W. Cole has a duty to indemnify Alfred for all claims to the extent that a the claims by Kohl's arise out of S.W. Cole's negligent acts. To read Article 8 as limiting S.W. Cole's duty to indemnify would render Article 10 moot.[7]

### b. Contractual Definition of "Professional Liability Insurance"

Alfred asserts that Mr. Corbett informed S.W. Cole that the increase in the professional liability coverage was intended to increase the limitation of liability to Alfred and not merely to third parties. (Alfred S.A.M.F. ¶ 28.) S.W. Cole claims that Alfred cannot use extrinsic evidence to explain which party the increase in professional liability coverage was intended to benefit. (S.W. Cole's R.S.M.F. ¶ 26.)

"Extrinsic evidence concerning a specific provision of an integrated agreement may not be considered unless the court determines the language of that provision to be

---

[7] Because Article 8 does not apply to Alfred's claims against S.W. Cole for indemnity and/or contribution, the court need not address Alfred's claim that the parties modified Article 8 of the August 2002 agreement when they negotiated the $3 million "professional liability insurance limit." Alfred Mem. at 6-9. However, the court notes that "any contract may be modified by subsequent agreement of the parties as long as the new agreement itself complies with the requirements of a valid contract." Maine Mortgage Co. v. Tonge, 448 A.2d 899, 902 (Me. 1982) (citing 3 A. Corbin, Contracts § 574 (1960 & Supp. 1980)). According to the August 2002 agreement, "[S.W. Cole] may agree to a higher limitation of liability if the parties mutually agree in writing to an increase in [S.W. Cole's] fee because of the higher risk [S.W. Cole] may assume." (S.W. Cole's S.M.F. ¶ 5, Ex. B; see also S.W. Cole's S.A.M.F. ¶ 7.) There is no dispute that Alfred paid an additional fee for the additional professional liability coverage and that Alfred never signed the subsequent letters in accordance with the terms of the August 2002 agreement. Under common law, "there need be no signatures unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent." 1 Corbin on Contracts § 2.10 (rev. ed. 1993) (citing, e.g., Chudnow Constr. Corp. v. Commercial Discount Corp., 180 N.W.2d 697 (Wis. 1970); Woodbury v. United States, 192 F. Supp. 924 (D.C. Or. 1961) aff'd 314 F.2d 291 (9th Cir. 1963) (contractual liability under a written contract may be assumed without a signature)). Additionally, the course of dealings between the parties may result in "a subsequent implied agreement that, in effect, validly modifie[s] the original [contract]." Maine Mortgage Co., 448 A.2d at 902. Mr. Corbett's affidavit is considered on the issue of the parties' course of dealings. Here, there is a genuine issue of material fact as to whether the letters, though not signed by Alfred, modified the August 2002 agreement. (Alfred's S.A.M.F. ¶¶ 2, 4-6, 8-11; S.W. Cole's R.S.M.F. ¶¶ 2, 4-6, 8-11.)

ambiguous." Handy Boat Serv., Inc., 1998 ME 134, ¶ 13, 711 A.2d at 1309. "Whether a contract term is ambiguous is a question of law." Coastal Ventures v. Alsham Plaza, LLC, 2010 ME 63, ¶ 26, 1 A.3d 416, 424 (citing Richardson, 2009 ME 109, ¶ 9, 983 A.2d at 403; Villas by the Sea Owners Ass'n v. Garrity, 2000 ME 48, ¶ 9, 748 A.2d 457, 461). "Contract language is only ambiguous if it is reasonably susceptible [to] different interpretations." Richardson, 2009 ME 109, ¶ 9, 983 A.2d at 403 (quotation omitted).

The language in Article 8 is ambiguous, especially when read in conjunction with Article 4. Accordingly, Mr. Corbett's affidavit is admissible on this issue. There is a genuine issue of material fact as to whether there was an increase in professional liability coverage only or an increase S.W. Cole's limitation on liability.[8] (Alfred's S.A.M.F. ¶ 23; S.W. Cole's R.S.M.F. ¶ 23; Cole Depo. 44:13-45:5; Alfred's Exs. 51 & 54.)

IV.     Count III: Breach of Contractual Insurance Procurement

Alfred claims that Cole breached its contract by failing to procure insurance with a $3 million policy limit. "The court is to ascertain the intention of the parties by looking at the agreement itself, taking into consideration the subject matter, motive and purposes of the parties, as well as the object to be accomplished." Waltman & Co. v. Leavitt, 1999 ME 4, ¶ 12, 722 A.2d 862, 864. However, the intent of a party entering a contract is a question of fact. Coastal Ventures, 2010 ME 63, ¶ 28, 1 A.3d at 425 (citing

---

[8] The facts of this case are distinguishable from G. Conway, Inc. v. Tocci Building Corp., et al., No. 01-2261, 2004 Mass. Super. LEXIS 589 (Mass. Super. Ct. Dec. 22, 2004), cited by S.W. Cole in support of its motion for partial summary judgment. The court in G. Conway held that a party does not waive its contractual limitation of liability when it provides proof of an insurance certificate. Id. at *9. In this case, there is an issue of fact regarding whether the parties contemplated increasing S.W. Cole's limitation of liability after executing the August 2002 agreement. Compare id. at *6 (finding that none of the six change orders executed during the contractual relationship addressed the limitation of liability clause). Additionally, in G. Conway, the court found that the certificates of insurance were merely informational and "that the certificate [of insurance] in no way modifies or replaces the limitation of liability provision set forth in the operative document, that is the contract between the parties"). Id. at **9-10.

11

Spottiswoode, 1999 ME 79, ¶ 16, 730 A.2d at 172). The August 2002 agreement states that "[S.W. Cole] maintains general liability, automobile liability and professional liability coverage." (Alfred's S.A.M.F. ¶ 12.) S.W. Cole agreed to "comply with the Client's reasonable requests for special endorsements, additional limits, additional coverage, et al., proving these are available to [S.W. Cole], and the Client renumerates [sic] [S.W. Cole] for the cost thereof." (Id.) Alfred claims that it did not agree to a "wasting" or "eroding" liability policy where defense costs would reduce the agreed-upon limit.[9] (Alfred's S.A.M.F. ¶ 29.) Alfred therefore asserts that it is entitled to the full $3 million in insurance protection. (Alfred's S.A.M.F. ¶¶ 30-31; Alfred's R.S.M.F. ¶¶ 20-22.)

Generally, this court "will not interpret an ambiguous insurance contract to provide coverage that was never contemplated by the parties." Pine Ridge Realty, Inc., 2000 ME 100, ¶ 21, 752 A.2d at 601. In Pine Ridge, the Court stated that "[b]ecause the parties did not intend for the policies to include [certain] coverage, no amount of ambiguity elsewhere in the contract language will draw that coverage within its terms." Id. ¶ 22, 601. S.W. Cole claims that Alfred never demanded any specific type of insurance policy and that it purchased a standard errors and omissions professional liability insurance policy. (S.W. Cole's R.S.M.F. ¶¶ 29-31; S.W. Cole's S.A.M.F. ¶¶ 20-22.) Though Alfred contends that the parties did not agree to anything less than the $3 million professional liability insurance policy limit, (Alfred's S.A.M.F. ¶ 29; Alfred's

---

[9] S.W. Cole claims that Alfred is barred from providing evidence as to the type of insurance policy and whether S.W. Cole could purchase a "wasting" or "eroding" liability policy. (S.W. Cole's R.S.M.F. ¶ 29.) However, "[i]f the contract is ambiguous, the court may consider extrinsic evidence regarding the intent of the parties." Pine Ridge Realty, Inc. v. Massachusetts Bay Ins. Co., 2000 ME 100, ¶ 21 n. 11, 752 A.2d 595, 601 n.11 (citing Handy Boat Serv., Inc., 1998 ME 134 ¶ 13, 711 A.2d at 1309).

R.S.M.F. ¶¶ 20-22,) it does not dispute that it requested anything other than S.W. Cole's standard professional liability policy.

There is a genuine issue of material fact as to whether the agreement to increase the professional liability insurance coverage required S.W. Cole to purchase a "non-eroding" policy that would provide a full $3,000,000 in coverage.[10] (Alfred's S.A.M.F. ¶¶ 29-31; S.W. Cole's R.S.M.F. ¶¶ 29-31; Alfred's R.S.M.F. ¶¶ 20-22; S.W. Cole's S.A.M.F. ¶¶ 20-22.) Additionally, "[w]hether there has been a breach of contract is a question of fact." VanVoorhees v. Dodge, 679 A.2d 1077, 1080 (Me. 1996).

The entry is

> S.W. Cole's Motion for Partial Summary Judgment on Count I of Alfred's Cross-claim is GRANTED with regard to equitable indemnity and DENIED with regard to equitable contribution.
>
> Alfred's Cross-Motion for Partial Summary Judgment on Count I of Alfred's Cross-claim is GRANTED with regard to equitable contribution and DENIED with regard to equitable indemnity.
>
> Alfred's Cross-Motion for Summary Judgment on Count I of S.W. Cole's Cross-claim is GRANTED with regard to equitable contribution and DENIED with regard to equitable indemnity.
>
> S.W. Cole's Motion for Partial Summary Judgment on Count II of Alfred's Cross-claim is DENIED. Alfred's Cross-Motion for Summary Judgment on Count II of S.W. Cole's Cross-claim is GRANTED. Alfred's Cross-Motion for Summary Judgment on Count II of Alfred's Cross-claim is GRANTED. Article 8 of the August 2002 agreement does not limit Alfred's claims for contribution or indemnity under Article 10.

---

[10] Under S.W. Cole's insurance policy, the insurer is not obligated "to defend any CLAIMS MADE, or to pay any further DAMAGES or EXPENSES after OUR available Limit of Liability is exhausted by payment of DAMAGES, judgements [sic], settlements, EXPENSES, or any combination thereof." (Alfred's S.A.M.F. ¶ 32; Ex. 50.)

13

Alfred's Motion for Partial Summary Judgment on Count III of Alfred's Cross-Claim is DENEID.

Date: _____2·10·11_____

Nancy Mills
Justice, Superior Court

CV-08-391

14

Pltf. John Hobson, Esq

Def. S.W. Cole.

Rebecca Farnum, Esq.

Def w/s Alfred.

David Herzer, Esq