1998 ME 201

**Sherry MASON**

v.

**TOWN OF READFIELD.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 22, 1998.
Decided Aug. 4, 1998.

Patrick Ende, Pine Tree Legal Assistance, Augusta, for plaintiff.

Lee K. Bragg, Joan M. Fortin, Bernstein, Shur, Sawyer & Nelson, P.A. Augusta, for defendant.

its own courts parallels the Maine Legislature's     ability to waive the State's sovereign immunity.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

RUDMAN, Justice.

[¶ 1] Sherry Mason appeals from the judgment entered in the Superior Court (Kennebec County, *Alexander J.*) affirming the decision of the Kennebec County Commissioners that she lacked standing to appeal from the denial of her application for a poverty abatement. Finding no error, we affirm.

I.

[¶ 2] In September of 1985, Mark and Sherry Mason entered into a land installment agreement to purchase 2.52 acres of land and a mobile home from Thomas Sawyer. The contract provides in relevant part:

3. As security for the Purchaser's obligation hereunder, Vendor shall retain title to the Property until Purchaser has fully paid the principle balance together with interest thereon. . . .

THIS AGREEMENT IS NOT A MORTGAGE AND PURCHASER DOES NOT HEREBY OBTAIN TITLE TO THE PROPERTY UNTIL THE PRINCIPLE BALANCE, TOGETHER WITH THE INTEREST THEREON, IS FULLY PAID.

4. During the term of this agreement and for such further time as said principal balance or any part thereof shall remain unpaid, Purchaser agrees to pay all taxes, assessments . . . against the property . . . .

In May of 1995, Mark and Sherry Mason divorced. Pursuant to the divorce decree, their joint interest in the property was set aside solely to Sherry.

[¶ 3] In October of 1996, Sherry Mason applied to the Town of Readfield for a poverty abatement pursuant to 36 M.R.S.A. § 841(2) (1990).[1] Mason sought an abatement of property taxes that had been assessed against Thomas and Kathy Sawyer, the record owners of the property. The Board of Selectmen denied her request on the ground that she was not the legal owner of the property. Mason appealed this denial to the Kennebec County Commissioners, who determined: "the taxes on the property in questioned [sic] are being assessed to Thomas and Kathy Sawyer, Sherry Mason is not the owner of the property. The County Commissioners do not feel there is any justification in their reviewing this appeal for poverty abatement." Mason appealed this decision to the Superior Court pursuant to M.R. Civ. P. 80B. The Superior Court affirmed. This appeal followed.

II.

[¶ 4] Mason contends that the County Commissioners erred in determining that she lacked standing to appeal from the denial of her poverty abatement application.[2] We disagree. "Rights of appeal from decisions of administrative tribunals are statutory, and capacity of any appellant to prosecute an appeal therefrom, i.e. standing to appeal, must . . . depend on the particular wording of the specific appeal statute involved." *Singal v. City of Bangor,* 440 A.2d 1048, 1050 (Me.1982). "In order to have standing to obtain judicial review of administrative action, a person 'must demonstrate a particularized injury [therefrom].'" *Seaborne v.*

---

1. The statute governing poverty tax abatements provides in relevant part:

2. **Infirmity or poverty.** The municipal officers . . . within 3 years from commitment, may, *on their own knowledge or on written application therefor,* make such abatements as they believe reasonable on the real and personal taxes on all persons who, by reason of infirmity or poverty, are in their judgment unable to contribute to the public charges. . . . Municipal officers . . . shall:

A. Provide that any person indicating an inability to pay all or part of taxes that have

been assessed because of poverty or infirmity shall be informed of the right to make application under this subsection; . . . .

36 M.R.S.A. § 841(2) (1990).

2. "When the Superior Court acts as an intermediate appellate court, we review directly the decision of the Commissioners 'for abuse of discretion, errors of law, or findings unsupported by substantial evidence in the record.'" *Quoddy Realty Corp. v. City of Eastport,* 1998 ME 14, ¶ 4, 704 A.2d 407, 408 (quoting *Weekley v. Town of Scarborough,* 676 A.2d 932, 933 (Me.1996)).

*Look,* 464 A.2d 221, 222 (Me.1983) (quoting *In re Lappie,* 377 A.2d 441, 443 (Me.1977)).

[¶ 5] Section 844(1) of Title 36 governs appeals from the denial of an abatement request. See 36 M.R.S.A. § 844(1) (1990 & Supp.1997). Pursuant to this section:

> if the assessors or the municipal officers refuse to make the abatement asked for ... *the applicant* **may apply to the county commissioners** within 60 days after notice of the decisions from which the appeal is being taken or within 60 days after the application is deemed to have been denied.

36 M.R.S.A. § 844(1) (emphasis added). In this case, Mason is "the applicant" for a poverty abatement. She therefore has standing to appeal the Board of Selectmen's denial of her abatement application if she suffered a particularized injury from that denial.

[¶ 6] "The requirement of a particularized injury is met when the judgment adversely and directly affects the party's property, pecuniary or personal rights." *Great Hill Fill & Gravel, Inc. v. Board of Envtl. Protection,* 641 A.2d 184, 184 (Me. 1994) (quotation omitted). We cannot conclude that the Town's denial of Mason's abatement request *directly* affects her pecuniary interests. Mason sought an abatement of taxes that had been assessed against the Sawyers. The effect of the Town's denial of her request is that the Sawyers still owe property taxes to the Town. The provision of the land installment contract between Mason and the Sawyers that obligates Mason to pay all taxes assessed upon the property renders her only indirectly affected by the denial of her abatement request.

[¶ 7] The purpose of the poverty abatement statute is "to prevent towns from forcing the sale of property in order to collect taxes from those otherwise unable to pay." *Macaro v. Town of Windham,* 468 A.2d 604, 606 (Me.1983). Mason argues that the Commissioners' decision thwarts this purpose because her inability to pay property taxes will cause her to "default under her Land Installment Contract, which would result in foreclosure and loss of her home."

Although we are not insensitive to Mason's plight, we must observe that such a loss of her home would not stem from a forced sale of the property by the Town; rather, it is a loss that the Sawyers would force pursuant to the terms of the land installment contract.

[¶ 8] Mason contends that this result is absurd because "[i]n a traditional mortgage situation, the mortgagor (the purchaser) is permitted to apply for a poverty abatement." Although one who purchases land through a land installment contract is in many ways similarly situated to a mortgagor, it is the province of the Legislature, not of this Court, to determine what statutory protections should be enjoyed by each class of buyers. The Legislature has directed municipalities to consider a mortgagor to be the owner for assessment purposes. *See* 36 M.R.S.A. § 554 (1990) ("In cases of mortgaged real estate, the mortgagor, for the purposes of taxation, shall be deemed the owner, until the mortgagee takes possession...."). Mason acknowledges that the Legislature has not directed municipalities to deem a purchaser to be the owner for assessment purposes. Since a municipality may assess property taxes against either the owner or the person in possession, *see* 36 M.R.S.A. § 553 (1990) ("All real estate shall be taxed in the place where it is to the owner or person in possession, whether resident or nonresident."), the Town's decision to tax the Sawyers instead of Mason constitutes a lawful exercise of its statutory discretion.

The entry is:

Judgment affirmed.