MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 76
Docket:       Oxf-13-332
Argued:       April 9, 2014
Decided:      June 10, 2014

Panel:        ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.
Majority:     SILVER, MEAD, GORMAN, and JABAR, JJ.
Dissent:      ALEXANDER, J.

JOHN A. THURSTON et al.

v.

JENNY G. GALVIN

GORMAN, J.

[¶1]  Jenny G. Galvin appeals from a judgment entered in the District Court (Rumford, *Oram, J.*) in favor of John A. Thurston and Patricia S. Thurston finding Galvin in default on a land installment contract, foreclosing her rights in the contract, and ordering a writ of possession in favor of the Thurstons.  Galvin contends that the Thurstons are barred from pursuing the foreclosure action because the contract did contain all of the contents required for land installment contracts by 33 M.R.S. § 482(1) (2013).  She also contends that the court erred when, after finding her in default and foreclosing her rights in the contract pursuant to 14 M.R.S. § 6203-F (2013), it did not order a public sale pursuant to 14 M.R.S. §§ 6321-6325 (2013).  Because we conclude that the contract complies with

2

33 M.R.S. § 482(1) and that 14 M.R.S. § 6203-F does not mandate a judicial sale of property subject to a land installment contract, we affirm the judgment.

## I. BACKGROUND

[¶2]  Galvin, a resident of New Hampshire, entered into a land installment contract with the Thurstons on October 10, 2008.  The contract established the terms of a transfer from the Thurstons to Galvin of an approximately nine-acre parcel of land with a dwelling in the Town of Bethel.  This parcel comprised a portion of a property jointly owned by the Thurstons that was encumbered by a mortgage held by Norway Savings Bank.  The contract fixed the purchase price at $550,000 with an initial payment of $115,000; monthly installments of $2749.50 for two years; and a final balloon payment due in October of 2010.  The parties subsequently amended the contract, extending the monthly payment obligation and delaying the balloon deadline by one year.  The contract also obligated Galvin to pay real estate taxes on the property.  In return, she acquired the right to possess the premises immediately and the right to receive "a good and sufficient Warranty Deed of said real estate, clear of incumbrances" after she paid the full purchase price.

[¶3]  The contract provided that Galvin's failure to pay the monthly installments, balloon payment, or real estate taxes would place her in default, at which time the Thurstons could foreclose her rights to the property "by any of the

means provided by law for the foreclosure of land installment contracts or mortgages." The contract contained no language indicating that, if she breached her obligations, Galvin would be entitled to recoup any portion of the monies she had paid the Thurstons.

[¶4] Galvin made the initial payment and made full monthly payments through September of 2011. She made no payments in October and November of 2011, made only partial monthly payments through March of 2012, and thereafter stopped making payments entirely. She also failed to pay the property taxes owed in 2011 and 2012.

[¶5] The Thurstons provided Galvin with a notice of default and right to cure in May of 2012. After Galvin failed to pay the sum owed to the Thurstons within the restoration period, they commenced this action. In their complaint, dated August 22, 2012, the Thurstons asked the court to find Galvin in default on the contract and enter a judgment of foreclosure pursuant to 14 M.R.S. § 6203-F; order the issuance of a writ of possession in their favor; and award damages reflecting interest and late charges, real estate taxes paid by the Thurstons on Galvin's behalf, costs of repair for waste to the premises, and attorney fees. In an amended answer filed on February 15, 2013, Galvin asserted, inter alia, that the

Thurstons were barred from the relief they sought because the contract did not comply with 33 M.R.S. § 482(1).[1]

[¶6] At a bench trial on April 9, 2013, witnesses testified about the terms of the land installment contract, the Norway Savings Bank mortgage on the property, a line of credit opened by the Thurstons against that mortgage, and the nature of the claimed damage to the premises.

[¶7] On May 1, 2013, the court entered a judgment of foreclosure against Galvin on the grounds that she was in default for having failed to make the requisite property tax and purchase price payments. In that order, the court determined that the Thurstons were not barred from bringing this action, even if the land installment contract failed to comply with 33 M.R.S. § 482(1), because they nonetheless would have had "access to the summary Forcible Entry and Detainer process in order to obtain possession of the real estate." Although the court declined to award damages for waste or real estate taxes, it determined, in an incorporated judgment of the same date, that the Thurstons were entitled to exclusive possession of the premises and ordered that a writ of possession issue upon the expiration of a sixty-day redemption period. The court further ordered

---

[1] Galvin also asserted that the Thurstons had breached the contract by causing Norway Savings Bank to foreclose or threaten to foreclose its mortgage on the property. She does not raise this issue on appeal, however, and we therefore deem it waived. *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290.

that, if Galvin failed to redeem the property, the Thurstons would be entitled to $6667.13 in attorney fees.

[¶8]     Galvin moved to alter or amend the judgment pursuant to M.R. Civ. P. 59(e) on the grounds that the court failed to order a public sale, as required by 14 M.R.S. §§ 6323-6324.   On June 21, 2013, the court denied the motion after concluding that the plain language of section 6203-F did not mandate a foreclosure sale and disbursement of the sale proceeds.  Galvin timely appealed.

## II.  DISCUSSION

A.     Contract Enforceability

[¶9]   Galvin first contends that the Thurstons are barred from pursuing a foreclosure action against her on the ground that the land installment contract is unenforceable because it does not include a conspicuous statement of encumbrances against the property, a statement of buyer's rights, or a provision that the vendor provide evidence of title, as required by 33 M.R.S. § 482(1).[2]

---

[2]  Title 33 M.R.S. § 482(1) (2008) provides, in pertinent part:

**1**.  **Contents.**  A land installment contract . . . shall contain at least the following provisions:

. . .

**J.**  A conspicuous statement of any encumbrances against the property, including a statement of any pending order of any public agency or other matters of public record affecting the property;

. . .

6

The court made no specific findings concerning the contract's compliance with these statutory provisions, and neither party moved for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b). Rather, the court determined that, even if the contract failed to satisfy the statute, the Thurstons had "access to the summary Forcible Entry and Detainer process" to regain possession of the premises and, therefore, were not barred from pursuing this action.

[¶10] The Thurstons never raised by their pleadings a cause of action for forcible entry and detainer, and the elements of such an action were never tried. *See* 14 M.R.S. § 6001(1) (2013); *Frost Vacationland Props., Inc. v. Palmer*, 1999 ME 15, ¶¶ 9-13, 723 A.2d 418 (discussing the elements of a forcible entry and detainer action); *see also* M.R. Civ. P. 15(b) (providing that issues not raised by the pleadings may be tried by express or implied consent of the parties). The court's rejection of Galvin's defense because the Thurstons might have an alternative remedy was thus error. Nonetheless, its ultimate conclusion that Galvin was in default on the contract was necessarily based on a finding that an

---

> **L.** A statement of the rights of the buyer established by Title 14, section 6111 to cure a default by the buyer;
>
> **M.** A provision that the vendor provide evidence of title by copy of deed, or otherwise, at the time of the execution of the agreement and, if the vendor is not prepared to deliver a full warranty deed on completion of the contract, a description of the deed which the vendor will deliver on completion. . . .

These same statutory requirements for land installment contracts were in effect in 2008 when the parties executed the contract, and have not been amended since then. *See* 33 M.R.S. § 482(1) (2008).

enforceable contract exists. *See Pelletier v. Pelletier,* 2012 ME 15, ¶ 20, 36 A.3d 903 (stating that, in the absence of a motion pursuant to M.R. Civ. P. 52(b), "we will infer that the trial court made any factual inferences needed to support its ultimate conclusion").

[¶11] Our independent review of the record supports the trial court's determination. *See Coastal Ventures v. Alsham Plaza LLC*, 2010 ME 63, ¶ 19, 1 A.3d 416 (the existence of an enforceable contract is reviewed for clear error); *Ackerman v. Yates*, 2004 ME 56, ¶ 10, 847 A.2d 481 (the interpretation of an unambiguous contract is a question of law that is reviewed de novo). The contract contains a section entitled "Encumbrances" that lists the outstanding mortgage on the property, thus satisfying the requirement of section 482(1)(J). Sub-paragraph (e) under the paragraph entitled "Default" provides information about Galvin's right to cure her default, and about her right to a delay in any foreclosure proceedings if the property were being used by her as her primary residence, generally complying with section 482(1)(L).[3] And, finally, the language found in the paragraph entitled "Description of Property," the attached deed description and plan, and the language found in the paragraph entitled "Closing," stating that, upon full payment of the agreed-upon price the Thurstons would provide Galvin with "a

---

[3] The trial court found that the Thurstons provided Galvin with a proper notice to cure pursuant to 14 M.R.S. § 6111 (2008) (requiring a thirty day redemption period), *amended by* P.L. 2009, ch. 402, § 10 (effective June 15, 2009) (requiring, inter alia, a thirty-five day redemption period). That finding has not been challenged on appeal.

8

good and sufficient Warranty Deed of said real estate, clear of encumbrances," demonstrates compliance with section 482(1)(M). Because the land installment contract is sufficiently definite to ascertain its exact meaning and fix exactly the legal liabilities of each party and because it is in substantial compliance with section 482(1), it is enforceable. *See Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625 (holding that a contract to sell a farm was sufficiently definite because it "embodied the essential material terms for a contract"); *see also Gollihue v. Russo*, 789 N.E.2d 1151, 1154 (Ohio Ct. App. 2003) ("[I]t is well established that a land contract may be held to be enforceable … even though it does not strictly comply with [the statutory minimum contents of land installment contracts].")

B. Foreclosure Process

[¶12] Galvin next contends that the court erred when it entered a judgment of foreclosure pursuant to 14 M.R.S. § 6203-F and ordered a writ of possession in favor of the Thurstons, rather than foreclosing her rights in accordance with the mortgage foreclosure process set forth in 14 M.R.S. §§ 6321-6325. That process mandates a public sale of real property after the expiration of a redemption period if the court determines that there has been a default. *See* 14 M.R.S. §§ 6322, 6323. The question here is whether section 6203-F requires a court to order a public sale

of the property at issue when ordering a foreclosure on a land installment contract.

We conclude that it does not.

[¶13] The interpretation of a statute is a legal issue that we review de novo. *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, 60 A.3d 1241. When interpreting a statute,

> [w]e first look to the plain meaning of the statute, interpreting its language to avoid absurd, illogical or inconsistent results and attempting to give all of its words meaning. When a statute is unambiguous, we interpret the statute directly . . . without examining legislative history . . . . We look to legislative history and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous. A statute is ambiguous if it is reasonably susceptible to different interpretations.

*Id.* (internal citations and quotation marks omitted).

[¶14] Section 6203-F provides, in pertinent part:

> If the purchaser of real estate under a contract for the sale of real estate, including a bond for a deed, is in default of any of the terms of that contract, the seller or the seller's heirs or assigns may foreclose the rights of the purchaser in the contract . . . by any of the means provided by law for the foreclosure of mortgages, except that the redemption period is 60 days.

14 M.R.S. § 6203-F(1). As Galvin correctly points out, under current law, "the means provided by law for the foreclosure of mortgages" are those set forth in 14 M.R.S. §§ 6321-6325.[4] Section 6203-F also states clearly, however, that the

---

[4] At the time of the enactment of section 6203-F, a defaulting mortgagor could simply be evicted from the premises by the mortgagee, and any payments made to that point were forfeited. *See* 14 M.R.S.A. § 6201 (1967) (foreclosure by possession, allowing a mortgagee to enter on the property with consent, by

10

mortgage foreclosure process applies only to the *"rights of the purchaser* in the contract." 14 M.R.S. § 6203-F(1) (emphasis added).

[¶15]  In land installment contracts generally, and certainly in this one, the purchaser's contractual rights are limited to possession of the premises until she has made the final payment.[5]  The vendor retains legal title to the property. *See Thompson v. Skowhegan Sav. Bank,* 433 A.2d 434, 436 (Me. 1981) (stating that "the vendor of land under an installment sale contract retains legal title to the land").  Accordingly, because Galvin's sole rights are possessory rights, those are the only rights affected by the section 6203-F foreclosure process.  Ending Galvin's right to possess the property, but then compelling the Thurstons to submit the property to a public sale would implicate the *vendors'* rights in the property, rather than the purchaser's rights.  The plain meaning of section 6203-F precludes

---

peaceable entry, or by writ of entry on conditional judgment, with such possession sufficient to foreclose the mortgagor's interest) (repealed 2007); 14 M.R.S.A. § 6203 (1967) (foreclosure without possession, permitting a mortgagee to foreclose the mortgagor's interest simply by public advertisement or service of notice) (repealed 2007).  In 1975, in response to several U.S. Supreme Court decisions that mandated notice and hearing before the deprivation of significant property interests, the Maine Legislature enacted the precursor to 14 M.R.S. §§ 6321-6325 (2013), thereby giving mortgagees the choice of strict foreclosure (with its risk of associated due process litigation) or an alternative method requiring notice, hearing, and an accounting.  *See* P.L. 1975, ch. 552 (effective Oct. 1, 1975); *see also* Comment, *The Constitutionality of Maine's Real Estate Mortgage Foreclosure Statutes*, 32 Me. L. Rev. 147, 147-48 (1980).  In 2007, however, the Legislature repealed all forms of strict foreclosure, leaving only the process set forth in 14 M.R.S. §§ 6321-6325.  *See* P.L. 2007, ch. 391, §§ 1, 3 (effective Sept. 20, 2007).

[5]  This does not mean that the purchaser in a land installment contract has no equitable rights. *See, e.g., Thompson v. Skowhegan Sav. Bank,* 433 A.2d 434, 436 (Me. 1981) (holding that, although the vendor to a land installment contract retains legal title, the purchaser is the equitable owner for purposes of bringing a tort claim against an abutting landowner).  The equitable rights of a purchaser, however, are not material in this case.

such an interpretation. Here, the only applicable provisions of 14 M.R.S. §§ 6321-6325 are those that apply to Galvin's right to possess to the property, i.e., those provisions that concern Galvin's rights of redemption. As to those, there is no dispute.

[¶16] We recognize that a growing number of courts have held that a land installment contract should be treated as a mortgage, at least in those cases where the purchaser's payments have been more than nominal, so as to afford a purchaser rights beyond redemption. *See* Restatement (Third) of Property: Mortgages § 3.4 cmt. b(3) & reporters' note (1997) (compiling cases); Grant S. Nelson, *The Contract for Deed As A Mortgage: The Case for the Restatement Approach*, 1998 BYU L. Rev. 1111, 1115-16 & n.58. We note, however, that the contract between Galvin and the Thurstons contains no language suggesting that Galvin should be permitted to recoup any of the payments made before breaching the contract. In addition, our treatment of a land installment contract as a mortgage would render meaningless the words "the rights of the purchaser in the contract" in section 6203-F. This we cannot do. *See Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 13, 17 A.3d 667 ("[W]e must not interpret the statutes in a manner that would render some of the language superfluous and meaningless."). To alter the statutory protections enjoyed by a purchaser of land through a land installment

contract "is the province of the Legislature, not of this Court." *Mason v. Town of Readfield*, 1998 ME 201, ¶ 8, 715 A.2d 179.

The entry is:

Judgment affirmed.

---

ALEXANDER, J., dissenting.

[¶17] I respectfully dissent.

[¶18] The Thurstons elected to pursue the statutory foreclosure remedy pursuant to 14 M.R.S. § 6203-F (2013). The foreclosure remedy to collect on a mortgage debt is a statutory remedy, with available relief necessarily limited to that provided by the foreclosure statute.

[¶19] Section 6203-F(1) governing foreclosure procedure, states, in pertinent part:

> 1. **Foreclosure procedure.** If the purchaser of real estate under a contract for the sale of real estate, including a bond for a deed, is in default of any of the terms of that contract, the seller or the seller's heirs or assigns may foreclose the rights of the purchaser in the contract not less than 30 days after giving the notice required by subsection 2 by any of the means provided by law for the foreclosure of mortgages, except that the redemption period is 60 days. . . . The remedy afforded by this section supplements other legal remedies that may be available to the seller.

[¶20] Thus, foreclosure may only be enforced "by any means provided by law for the foreclosure of mortgages." *Id*. Pursuant to the foreclosure law today, the only means provided by law for foreclosure is established in 14 M.R.S. §§ 6321-6325 (2013) implemented by the procedures specified in M.R. Civ. P. 55(a)(1), 56(j), and 93. That process envisions, ultimately, a public sale of the premises, 14 M.R.S. § 6323, with any net proceeds of the sale going to the defaulting purchaser after payment of the outstanding loan balance and costs of the foreclosure proceeding, 14 M.R.S. § 6324.

[¶21] Oftentimes there may be no net proceeds left after the sale, and the defaulting purchaser may be assessed a deficiency judgment. But a deficiency judgment is unlikely here where, given Galvin's $115,000 down payment and payments totaling almost $100,000 over three years, Galvin has paid approximately $215,000 of the original $550,000 purchase price. On these facts, the Court's approved remedy, depriving Galvin of any opportunity to recover some value from the sums she has paid, will likely result in a considerable windfall to the Thurstons.

[¶22] The Court reaches this result by holding that the purchasers of the property subject to the foreclosure action have not acquired title to the property and are therefore not the owners of the property and not subject to the protections afforded by 14 M.R.S. §§ 6321-6325. However, this holding does not explain why

the only remedy provided by the foreclosure statute should be rendered a nullity, with the sellers then free to invoke some other remedy, outside the foreclosure statute, to pocket any net value left from the purchaser's payments for the property, rather than return any net proceeds from a public sale to the defaulting purchaser.

[¶23]   I would hold that in electing to invoke the statutory foreclosure process, the Thurstons limited their remedies to those provided in the foreclosure statute.   Because the trial court did not apply those remedies to protect any net equity in the purchaser's investment, I would vacate the judgment of the trial court.

---

**On the briefs and at oral argument:**

Donald A. Fowler, Jr., Esq., Kingfield, for appellant Jenny G. Galvin

John S. Jenness, Jr., Esq., South Paris, for appellees John S. Thurston  and Patricia S. Thurston

Rumford District Court docket number RE-2012-30
FOR CLERK REFERENCE ONLY